The Calumet River Railway Company

*v.*

Clara Moore *et al.**

*Filed at Ottawa March 26, 1888.*

| | |
|---|---|
| 124 | 329 |
| 125 | 396 |
| 125 | 606 |
| 124 | 329 |
| 126 | 53 |
| 124 | 329 |
| 128 | 176 |
| 124 | 329 |
| 151 | 683 |
| 152 | 27 |
| 124 | 329 |
| 49a | 286 |
| 124 | 329 |
| 156 | 104 |
| 124 | 329 |
| 169 | 338 |
| 124 | 329 |
| 174 | 554 |
| 124 | 329 |
| 184 | 459 |
| 124 | 329 |
| 195 | 8362 |
| 124 | 329 |
| 209 | 2499 |

1.   Eminent Domain—*measure of damages—present value as the basis.* In a proceeding to condemn land for a public use, the damages to be awarded as compensation to the land owner must be based upon the fair cash value of the land at the time of the condemnation.

2.   Same—*adaptation to particular use—as an element of damages.* The compensation is to be estimated with reference to the uses for which the property is suitable in its then condition, having regard to its location, situation and quality, and to the business wants in that locality, or such as may reasonably be expected in the near future.

3.   If lots abutting upon a river are available for dock purposes, for which there is no present demand, their value when improved by the building of docks, the profits that might be derived therefrom, or the value of the lots at some future time, as, when business or the wants of the community may make profitable the building of docks or slips on the lots, is merely conjectural and remote, forming no proper element in estimating the damages to be paid.

* The following cases were also considered in the same opinion: *Calumet River Railway Co.* v. *John Leffler,* and *Same* v. *Jeannette Freeman.*

4. But if the fact that lots are located with a frontage on a river, at a place where they can, at some future time, when demanded, be made available as dock property, enhances their present market value in their then condition and state of improvement or want of improvement, that fact will be competent, and proper to be shown and considered by the jury in estimating the damages.

5. In such case, it can make no difference that there may be no present demand for docks upon the lots. If, in consequence of their supposed adaptation to such use, they have an increased market value above what they otherwise would have, such value forms the proper basis of a recovery.

6. SAME—*evidence—plan of proposed improvement of property by the owner.* On the assessment of compensation and damages in a proceeding to condemn for a right of way a strip across lots abutting upon a river, the court allowed the lot owner to introduce in evidence a plat of a proposed improvement, showing water fronts of proposed docks along the river. The court, in admitting the plat, and in an instruction, limited this evidence to the question of what uses the lots might or might not be adapted to: *Held,* no error in its admission.

7. INSTRUCTIONS—*whether authorizing a belief outside of the evidence.* An instruction in a condemnation proceeding, telling the jury that they are to assess the damages at such sum as in their *judgment* the defendants are entitled to under the evidence, is not open to the criticism that it authorizes the jury to make up a belief and judgment outside of the evidence.

8. SAME—*whether assuming a fact.* An instruction that if the jury believe the damages, in a condemnation proceeding, exceed the benefits, provided they believe there are benefits, they should assess the damages in excess of benefits at such sum as in their judgment the defendants are entitled to, under the evidence, is not open to the objection that it tells the jury positively that there are damages, but that the benefits are doubtful. The words, "under the evidence," relate to and govern both antecedent propositions, damages as well as benefits.

9. NEW TRIAL—*excessive damages.* Where there is a great disparity in the evidence as to the value of the land sought for a right of way for a railroad, and as to damages to land not taken, this court will not feel justified in reversing the judgment on the verdict, unless it appears that the result reached by the jury is clearly unreasonable, and the damages awarded are grossly excessive, so as to evince that the verdict was the result of passion, or undue and improper motive or influence.

APPEAL from the County Court of Cook county; the Hon. ELBERT H. GARY, Judge, presiding.

This was a proceeding brought in the Cook county court, by the Calumet River Railway Company, to condemn a right

·of way one hundred feet wide, across certain lots in the division of the north one hundred and ten acres of the north-east fractional quarter of section 19, township 37 north, of range 15 east, in Cook county. The particular lots involved in this appeal were lot 2, containing five acres, and owned by Clara Moore, lot 3, containing eighteen acres, and owned by John Leffler, and lot 4, containing fourteen acres, and owned by Jeannette Freeman. The relative positions of the river and railroad to these lots is well shown by the following plat:·

N. E. Frac. Qr. Sec. 19.

The jury, on the application of the appellant, viewed the premises. The verdict found the damages for land taken and

to land not taken, as to each tract and lot owner, severally, and judgments were rendered thereon. The railroad company appeals.

Mr. Frank J. Loesch, and Mr. Charles A. Allen, for the appellant.

Mr. Seth F. Crews, for the appellees.

Mr. Justice Shope delivered the opinion of the Court:

The three .cases of *Calumet River Railway Co.* v. *Clara Moore et al.*, *Same* v. *John Leffler*, and *Same* v. *Jeannette Freeman*, involving the condemnation of the right of way of appellant company's railway across adjoining tracts of land, and presenting substantially the same questions, will be considered together. An objection common to each case is, that the damages awarded were excessive, and the judgments severally rendered should be reversed.

As is not unusual in cases of like character, there was wide divergence in the evidence of the witnesses, both as to the value of the land taken and as to damages to adjacent lands of the several owners not taken. The estimates of the value of lot 2 ranged from $100 to $1500 per acre, and of lots 3 and 4 from $100 to $2500. In respect of the damages to portions of the lots not taken, there was equally wide disparity. The jury seem to have considered this evidence, and fixed the damages to be awarded to appellees, in each instance, at a sum far below the highest estimates, and somewhat above the lowest; given by the witnesses. Ample evidence is disclosed, independently of the personal inspection of the jury, upon which the verdict as to each tract may rest. In such cases, this court will not be justified in reversing, unless it appears that the result reached by the jury is clearly unreasonable, and the damages awarded are grossly excessive, so as to evince that the verdict has been the result of passion, or undue and

improper motive or influence.    Nothing of the kind is apparent here.

Counsel concede that this rule is applicable to land taken, but question its applicability to land damaged but not taken. We are unable to perceive upon what principle the distinction suggested can rest.    The rule has its basis in the office performed by the jury.    It is their special province to weigh and consider the evidence, and so long as their action is based upon evidence, and is free from the taint of corruption, passion or prejudice, and within reason, courts must accept and give effect to it.    *Chicago and Evanston Railroad Co.* v. *Blake*, 116 Ill. 163.

It is said that improper elements of damage were permitted to be shown by the evidence, and the court improperly instructed the jury in respect thereto.    Two of these parcels of land abut upon Calumet river, and the other one is cut off from the river about four hundred feet.    This river falls into Lake Michigan at South Chicago.    The north line of lot 2 is One hundred and Fourteenth street, and the distance by the river, from thence to the river mouth, is three and a half miles. From the mouth of the river south, as far as Ninety-fifth street, more or less of the river front appears to have been docked, and from Ninety-fifth street to the property in question it is equally available for dock purposes, though as yet no improvements of that character have been constructed, except one at Cummings, half a mile north of this property. "It was conceded," counsel for appellant says, in his brief, "by all the witnesses, that this river property had a value as possible dock property," and the evidence clearly tended to show that fact.    But it is said that the evidence does not show that there is now any demand for docks at this point on the river, and that the consideration of such possible demand introduced speculative elements, and that the estimates in respect thereof were speculative and remote, and therefore improper.

In proceedings for condemnation of private property for public use, as is here sought to be done, the damages to be awarded as compensation to the land owner must be based upon the fair cash value of the land at the time of the condemnation thereof. The questions ordinarily to be determined by the jury are, first, what is the present market value of the land taken; and second, to what extent, if at all, will the remainder of the tract of land not taken be depreciated in its market value by reason of the taking and appropriation of the land taken to the proposed use. The compensation is to be estimated with reference to the uses for which the property is suitable in its then condition, having regard to its location, situation and quality, and to the business wants in that locality, or such as might reasonably be expected in the near future. If these lots were available for dock purposes, (for which, as shown, there was no immediate demand,) their value, when improved by the building of docks, the profits that might be derived therefrom, or the value of the lots at some future time, as, when business or the wants of the community might make profitable the making of docks or slips on this property, would be merely conjectural and remote, forming no proper element in estimating the damages to be paid. But if the fact that these lots were located with a frontage on this river, at a place where they could, at some future time, when demanded, be made available as dock property, enhanced their present market value in their then condition and state of improvement, or want of improvement, that fact would be competent and proper to be shown, and be considered by the jury in estimating the damages. It can make no difference that there might be no present demand for docks upon these lands. If, in consequence of their supposed adaptation to such use, they had an increased market value above what they otherwise would have, such value forms the proper basis of recovery. We said in *Chicago and Evanston Railroad Co.* v. *Jacobs,* 110 Ill. 414, that in these cases "the real issue was, what was the market.

value of the property for any purpose for which it is adapted or might be used." And so, in *Dupuis* v. *Chicago and North Wisconsin Railway Co.* 115 Ill. 97, we held that if lands were valuable, by reason of their location on or near a river, for the purposes of operating a saw mill or factory, or any other purpose, testimony to prove the same was proper for the consideration of the jury, in determining the fair market value of the premises. *Jacksonville and Southeastern Railway Co.* v. *Walsh,* 106 Ill. 253; *Washburn* v. *Railroad Co.* 59 Wis. 369.

The evidence in this case shows that these lots 3 and 4 had a market value, based upon their availability to be put to the purpose indicated, and so far as the evidence tended to show the present market value of the lots, we are of opinion it was competent, and that damages based thereon are neither remote nor speculative. The jury were expressly told that in determining the value of the lots for dock purposes, the value should be estimated at their present cash market value. It is evident that the jury estimated the damages from the present cash market value of the land, as they found it to be from the evidence, as they were instructed by the court to do. The jury had before them evidence tending to show the capabilities and adaptability of these parcels of land to dock purposes by reason of their location and their abutting on this river, and that the market value thereof as then situated was enhanced by this fact. It clearly appears that their availability for dock purposes is wholly destroyed by the taking and appropriation of the right of way across the lots by petitioner's road. The injury is permanent, and viewing the case and all its facts, we can not say that the damages awarded were grossly excessive or unreasonable.

It is argued that the jury must have considered improper elements in the cases of Leffler and Freeman, from the fact that there is great disparity between the damages awarded them and the damages awarded appellees Moore and others; but it will only be necessary to say that lot 2, owned by the latter,

is not shown to be adapted to dock purposes, to account for the difference in the damages awarded, if there were no other reason therefor.

On the trial, appellees Leffler and Freeman offered, and the court permitted to go to the jury, over appellant's objection, a plat of a proposed improvement, viz., a slip one hundred feet wide,—fifty feet on lot 3, and fifty feet on lot 4,—and extending back from the river about one thousand feet, and showing the water fronts of proposed docks along the river. In admitting this plat the court said: "The court receives the map merely as an illustration of one of the uses for which it is claimed the property is adapted, and expressly limits it to that object." And at the request of appellant, the court gave the following instruction:

"The court instructs the jury, that the evidence of the plans or intention of the owners of lots 3 and 4 in question, to construct a slip between said lots, or to make dock property of said lots, or either of them, should not be considered by the jury to enhance or increase the damage of said owners, by showing such construction of a slip or dock would be a profitable investment, but the jury should consider the evidence of such plans or intentions merely on the question as to what uses said lots might or might not be adapted, giving to such evidence such weight as the jury believe it is entitled to; and the court further instructs the jury, that they must find the just compensation to be paid for each of said lots in its present condition, separately."

The introduction of this plat, for the purposes named, and limited by the trial judge at the time, in connection with the instruction given the jury in respect thereto, can not, under the authority of *Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163, be regarded as erroneous. It was not pretended that the slip had been constructed or the docks erected. Indeed, it was a fact known to the jury, from their inspection of the premises, that the land was in its natural state, unimproved

in any way. This being so, the exhibiting of a plat showing no more than a contemplated improvement to which it was thought the premises were well adapted, and which the construction of the proposed railway would render impossible or seriously interfere with, could not have misled the jury into allowing damages for an improvement not in existence.

The remaining objections of appellant relate to instructions given on behalf of the appellees. While it is true that the finding of the jury is always to be based upon the evidence, and great care is to be used, in drawing instructions, not to exclude this principle, it is the judgment of the jury, based upon and springing out of the evidence, that takes form in the verdict. Hence an instruction which tells the jury that they are to assess damages at such sum as, in their *judgment*, the defendants are entitled to under the evidence, is not open to the criticism that it tells the jury they may make up a belief and judgment outside the evidence. Nor is an instruction which tells the jury, that if they believe the damages exceed the benefits, provided they believe there are benefits, then they should assess the damages in excess of benefits at such sum as, in their judgment, the defendants are entitled to under the evidence, open to the objection that it tells the jury positively that there are damages, but that the benefits are doubtful. The concluding words, "under the evidence," relate to and govern both antecedent propositions,—damages no less than benefits,— and must have been so understood by the jury.

Finding no error in the record, the judgments of the county court of Cook county, in the cases named, will be affirmed.

*Judgment affirmed.*