M. BYRON RICH *et al.*

*v.*

THE CITY OF CHICAGO.

18:35 LRA 401

*Filed at Ottawa March 31, 1894.*

1. SPECIAL ASSESSMENT—*jurisdiction—waiver of defective notice by appearance.* In confirmation proceedings the filing of the petition gives the court jurisdiction of the subject matter, and the appearance of property owners, and filing of objections by them without objecting to the notice given of the pendency of the proceedings, give jurisdiction of their persons. Objections to the notice cannot be heard for the first time in a court of review.

2. SAME—*objections by one lot owner in behalf of others.* The proceedings and judgment as to lots assessed are several, and those owners who appeal cannot be heard to object that the assessment as to the lands and lots of other parties not appealing was improperly confirmed.

3. SAME—*lot designated for condemnation need not be assessed.* A lot which, by the terms of the ordinance, is appropriated to the public use by a provision requiring its condemnation, need not be assessed, since the city would itself have to pay the assessment; and the ordinance will not be void for inequality because of a failure to provide for the assessment of such lot.

4. SAME—*failure to assess lot—evidence of benefits.* An ordinance will not be held void, as being unequal in its operation, because it fails to provide for the assessment of a lot, unless proof is offered that the lot so omitted from the assessment roll is specially benefited by the improvement.

5. SAME—*property not contiguous may be assessed.* If property is specially benefited by the increase of its present market value in consequence of the improvement, it may be included in the assessment, although it does not actually abut upon the improvement.

6. SAME—*description of improvement—what sufficient.* An ordinance for the construction of certain sewers, which provides for a certain number of man-holes and catch-basins, to be connected with the sewers, but fails to locate the same more definitely than that they shall be placed as directed, and which further provides that the sewers shall be constructed in accordance with plans and specifications attached, "under the superintendence of the department of public works," is not void, as failing to sufficiently describe the improvement.

7. SAME—*delegation of power to change improvement.* While it is well settled that the ordinance cannot delegate power to make changes, yet the fact that certain provisions relating to the duties of contractors, which were filed with the specifications referred to in the ordinance, contained language seeming to imply such a delegation of power, will not vitiate the ordinance, being, in fact, no part of the plans and specifications.

8. SAME—*railroad property—measure of benefits.* As against a railroad company it is erroneous to permit the city to introduce evidence to show that as a result of the drainage the adjacent country would likely be improved and the revenues of the company thereby be increased. The measure of benefits is the present increased market value of the property against which the assessment is made.

9. SAME—*instruction as to benefits.* An instruction that if the jury "believe, from the evidence, that the assessment on the premises of objectors is correct and just, then the jury will find the issues for the petitioner," etc., is subject to the criticism that it ignores the true basis of special assessments, and leaves the jury to determine, without standard or measurement, what is correct and just; but such error may be cured by other explanatory language in the same instruction or others.

10. SAME—*city charter of Chicago construed.* The terms "lots, blocks, tracts and parcels of land," designated for special assessment in the Cities and Villages act of 1872, are as broad as the term "real estate," used in the amended charter of Chicago, and, so far as the designation of assessable property is concerned, there is no distinction between them.

11. SAME—*right of way of railroad in street assessable.* The right of way of a railway company, even though the same is in a public street, is liable to special assessment for local improvements.

12. DRAINAGE—*jurisdiction of city authorities.* The questions whether lands and lots of a city shall be drained, and how and where it shall be done, are within the legislative discretion of the city authorities; and the fact that in this case the ordinance of the city of Chicago provides for the discharge of the drainage into Lake Michigan, is not so far against public policy as to render the ordinance void.

13. SAME—*act of 1885 not repealed by the act of 1889—"corporate authorities."* The act approved June 22, 1885, entitled "An act to invest the corporate authorities of cities and villages with power to construct, maintain and keep in repair drains, ditches, levees, dikes and pumping works for drainage purposes," etc., is a valid act, and not repealed by the act of 1889, entitled "An act to create sanitary districts," etc., in force July 1, 1889, and the city and village authorities are the proper "corporate authorities" of drainage districts organized thereunder.

14. SAME—*purpose of the act of 1889.* The purpose of the legislature in authorizing the creation of sanitary districts, by the act of 1889, was the construction of main channels, through which the entire drainage and sewage of districts might be discharged, and the bringing of the sewage and drainage of the districts into such channels; and the construction of the "adjuncts and additions" authorized by the act is dependent upon the construction and completion of the main channels.

15. SAME—*power of trustees under act of 1889.* The act of 1889, to create sanitary districts, etc., does not require that sewage systems of incorporated cities within sanitary districts should pass immediately under the control of the trustees provided for in said act, but upon the completion of the main channels, and when the same, together with the adjuncts and additions, are so extended that the lands of the sanitary districts are drained thereby, then such channels and all auxiliary drains may pass under the control of said trustees for drainage purposes.

16. STATUTES—*repeals by implication.* Repeals by implication are not favored, and if two acts, though seemingly repugnant, may be so construed that each may be given force and effect, the former will not be held to be repealed by implication.

APPEAL from the County Court of Cook county; the Hon. D. B. SHERWOOD, Judge, presiding.

Mr. F. W. BECKER, and Messrs. RICH & STONE, for the appellants.

Mr. C. V. GWIN, for the Illinois Central Railroad Co.

Mr. CHARLES C. GILBERT, and Mr. JOHN S. MILLER, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The city of Chicago passed an ordinance for the construction of a receiving well and pumping works at the

south-west corner of Seventy-third street and Railroad
avenue, in said city, and for the construction of sewers
in said street and others, and a discharge sewer from the
pumping works into Lake Michigan. It is provided by
the ordinance that the receiving well and pumping sta-
tion, etc., shall be constructed upon lot 62, division 4, of
South Shore subdivision of the north fractional half of
section 30, township 38, north, range 15, east of the third
principal meridian, and specifically describes in detail
the mode of constructing the same, and also the mate-
rials to be used, mode of construction, location, etc., of
the sewers and discharge sewer. The objections to the
specifications in the ordinance will be hereafter noticed.

The ordinance creates a drainage district within the
city, prescribes that the cost of said improvement shall
be paid by assessment of property specially benefited
thereby, so far as it may be legally done, in accordance
with article 9 of the Cities and Villages act, and appoints
commissioners to estimate the cost of the proposed im-
provement, etc. The commissioners having reported an
estimate of the cost thereof, this petition was filed in the
county court, under said article, for the assessment of
the same upon the property benefited, etc. Commis-
sioners were appointed to levy the same, and an assess-
ment roll was duly returned. An order was entered
fixing a day and hour when objections would be heard to
said assessment roll.

It is objected, first, that the notice published was in-
sufficient, under the statute, to give the court jurisdiction
to proceed to the confirmation of said assessment roll.
We do not deem it important to determine whether the
objection, if made in apt time, would have prevailed or
not. The filing of the petition, under the statute, gave
the court jurisdiction of the subject matter. The ob-
jectors, appellants here, severally appeared, and without
objecting to the jurisdiction of the court, and without
challenging the sufficiency of notice, filed objections to

the confirmation of the assessment roll, and proceeded to the hearing, both of objections to the court and of objections triable by jury, without objection. Objectors cannot now be heard, for the first time, that they were not served with the proper notice of the pendency of the proceedings in the county court. The proceedings and judgment, as to the lots assessed, are several, and appellants cannot be heard to object that the assessment roll, as to other lands or lots assessed, was improperly confirmed.

The ordinance in this case was passed in pursuance of the provisions of the act of the legislature approved June 22, 1885, entitled "An act to invest the corporate authorities of cities and villages with power to construct, maintain and keep in repair drains, ditches, levees, dikes and pumping works for drainage purposes, by special assessment upon property benefited thereby." (3 Starr & Curtis, 244.) The validity of this statute, and ordinances passed thereunder, came before this court in *Village of Hyde Park* v. *Spencer*, 118 Ill. 446, and *Pearce* v. *Hyde Park*, 126 id. 287, and was sustained, and the authorities of the city or village were held to be the proper "corporate authorities" of the drainage district, within the meaning of section 31, article 4, of the constitution, authorizing the General Assembly to provide for the organization of drainage districts, and to vest the corporate authorities thereof with power over the same. It is, however, contended, that if this be so, the act of 1885 is repealed by the act of 1889, entitled "An act to create sanitary districts, and to remove obstructions in the Desplaines and Illinois rivers," in force July 1, 1889, (3 Starr & Curtis, 478,) so far as it relates to territory within districts organized under the act of 1889. We are required, by section 2 of the latter act, to take judicial notice of the organization of districts thereunder, and it is admitted in the record that all of the territory included in the district organized under this ordinance was, at the time of the passage of such ordinance by the city council of the city of Chicago, included within the

sanitary district of Chicago organized under said act of 1889, and that trustees were duly elected, etc., as provided by said act, within said sanitary district. The validity of the act of 1889, as well as the organization of said sanitary district and the title of the trustees to the offices thereunder, has been expressly affirmed by this court. (*People ex rel.* v. *Nelson*, 133 Ill. 565; *Wilson* v. *Board of Trustees*, id. 443.) The question is therefore fairly presented whether the city authorities, acting under the act of 1885 and in conformity therewith, may provide for the construction of drains and ditches within the city, in territory also included within such sanitary districts.

Section 3 of the act of 1889 provides for the election of nine trustees therein, who shall hold their office for the term of five years, etc. Section 4 provides: "The trustees elected in pursuance of the foregoing provisions of this act shall constitute a board of trustees for the district by which they are elected, which board of trustees is hereby declared to be the corporate authorities of such sanitary district, and shall exercise all the powers and manage and control all the affairs and property of such district." It will be seen they are to be the "corporate authorities" of the sanitary district, are to exercise all the powers of such district and control all its affairs and property. It is not declared, nor will the statute admit of the construction, that they are to exercise all the powers that may be granted in respect of the drainage of lands within the district, but only such powers as are conferred upon the sanitary district. If we now turn to section 7 of the act we shall see what power in respect of drainage is committed to the corporate authorities of the sanitary district. It is therein provided: "The board of trustees of any sanitary district organized under this act shall have power to provide for the drainage of such district by laying out, establishing, constructing and maintaining one or more main channels, drains, ditches and outlets for carrying off and disposing of the drainage,

including the sewerage, of such district, together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed, in a satisfactory manner." The trustees are to make one or more *main* channels, drains, ditches and outlets, with such adjuncts and additions thereto as may be necessary or proper to accomplish the end for which such "channels and outlets" are designed, in a satisfactory manner.

Independently of the history of this legislation, which is a matter of common knowledge, it is apparent from the act that the purpose of the legislation in the creation of such districts was the construction of a main channel or channels, through which the entire drainage and sewage of the district might be discharged, and upon its or their completion, the carrying, by means of "adjuncts or additions," of the sewage and drainage of the district into such channel or channels. Not only is this evinced by the language quoted, but the residue of section 7 provides for the extension of such channels or outlets outside of the sanitary district, authorizes the making and establishment of docks adjacent to any navigable channel made by the district, and to lease, manage and control such docks or any water power which may be incidentally created in the construction of such channels or outlets. Section 20 provides for a channel or outlet which may discharge sewage into or through rivers or streams of water beyond the limits of the district, and provides that such channel or outlet shall have sufficient size and capacity to produce a continuous flow of at least two hundred cubic feet per minute for every 1000 of the population of the district thereby drained, etc. Section 19 provides that the district shall be liable for all damages to real estate outside of such district which shall be damaged by reason of the construction, etc., of any channel, etc. And by section 23, if any channel is constructed under the provisions of the act, by which any of the

waters of Lake Michigan shall be caused to pass into
the Desplaines or Illinois river, the size and capacity are
specifically prescribed, and such channel, when com-
pleted, etc., is declared a navigable stream.

Enough has been stated to show the evident purpose
and intention of the legislature to attempt the ultimate
bringing of the sewage and drainage of the district into
channels and outlets therein provided for, and it is
equally apparent that the construction of the "adjuncts
and additions" authorized by the act is dependent upon
the construction and completion of the main channel or
channels. Their only purpose is to accomplish the end
for which such main channels are designed. It could not
have been within the legislative contemplation that the
sewerage system of the incorporated city or village
within the sanitary district should pass immediately
under the control of the trustees of the sanitary district.
Undoubtedly, upon completion of the main channels, and
when such channels and "adjuncts and additions" are
so extended that the lands of the sanitary district are
drained thereby, the statute contemplates that such
channels and auxiliary drains and ditches, "adjuncts
and additions," will be under the control of the trustees
for drainage purposes, and that the sewage and drainage
of the district be discharged, through such lateral "ad-
juncts and additions," into such main channel or chan-
nels. Upon the organization of the sanitary district of
Chicago, it is a matter of common knowledge that the
trustees entered upon the construction of the channel
contemplated by the act, by which water from Lake
Michigan was to be turned into the Desplaines and Illi-
nois rivers. From the magnitude of the work prescribed
by the statute, it must have been known that some years
in time and large sums of money would be required in its
construction. It is apparent that these considerations
were within the legislative contemplation in passing this
act, and it cannot be supposed that the legislature in-

tended that in the interim, and until the system of sewerage of the sanitary district should be completed, there should be no authority in the city of Chicago to construct, extend or otherwise provide for the sewerage and drainage of the city.

Repeals by implication are not favored, and if the two acts, though seemingly repugnant, may be so construed that each may be given force and effect, the former will not be held to be repealed by implication. (*Cook Co.* v. *Gilbert,* 146 Ill. 268, and cases there cited.) As we have seen, the drainage of the district, except in the mode prescribed in the act of 1889, has not been confided by law to the trustees of the sanitary district. By construing the act of 1885 as applying to lands within the sanitary district until the work of the sanitary district is so far completed as to accomplish the end for which it was designed, or until the lands are connected with the drains of the sanitary district, each act finds ample scope for operation.

What will be the effect when the drainage system contemplated by the act of 1889 shall be completed or the lands are connected with and drained by such system is not before us in this case, and no opinion is expressed in regard thereto; but until drainage is provided thereby, we hold that the corporate authorities of the city may, under the act of 1885, establish and maintain drains, etc., as therein provided, in districts and parts of the city not actually drained by the drains of the sanitary district.

The point made by counsel, that the drainage of sewage into Lake Michigan is against public policy, and that therefore this ordinance providing therefor is void, is without merit. The questions as to whether the lands and lots of the city shall be drained, and how and when it shall be done, are within the legislative discretion of the city authorities.

It is also objected that the assessment is void for the reason that lot 62, before mentioned, upon which the receiving well and pumping works were to be placed, and

which it was provided in the ordinance should be condemned for such purpose and the cost thereof included in the assessment, was not assessed. This objection cannot obtain for two reasons. By the ordinance lot 62 was appropriated to the public use, and any assessment against it must necessarily have been paid out of the general revenues of the city, in addition to the amount found by the commissioners appointed to make an estimate of the cost of the improvement. Again, no evidence was offered tending to show that said lot 62 was benefited in any definite or specific sum. Under the authority of *Chicago, Rock Island and Pacific Railway Co.* v. *Chicago,* 139 Ill. 573, the objection is untenable, without showing that property has been excluded from the assessment roll to the prejudice of objectors. *Green* v. *Springfield,* 130 Ill. 515; *Walters* v. *Town of Lake,* 129 id. 23.

It is also objected that the assessment is void because it includes lots not abutting on Seventy-third street, in which the sewer is ordered to be laid. In special assessment it is not essential that the property assessed should be contiguous to or abutting upon the improvement,—it is sufficient that the property be presently specially benefited. The evidence tends to show that adjacent lots assessed will be specially benefited, by increasing their market value, in consequence of the improvement. Sewer connections were put in at the various street intersections, into which the side and adjacent street sewers could, at any time when constructed, be discharged. In so far as the opportunity thus afforded for drainage increased the present market value of the sub-adjacent lots, the improvement was of special benefit. (*Calumet River Railway Co.* v. *Moore,* 124 Ill. 329.) And this would seem to be the basis upon which special benefits to such property were estimated.

It was also objected that house-slants into the main sewer on Seventy-third street are required to be put in, and it is said that property not abutting upon that street

could not be rightfully taxed for a part of the improvement benefiting abutting property only.   The answer is evident.   If such slants are of benefit only to abutting lots. presumably such benefit would be assessed to such lots.   Lots not abutting would be assessed no more than they were benefited by the sewer, and no more than their proportionate share of the estimated cost of the improvement as a whole.

It was also objected, that as the ordinance provided for sixty-three man-holes and one hundred and seventy-six catch-basins, but did not specifically prescribe where they should be located, there is therefore no sufficient description of the nature, character and location of the improvement.   The ordinance provides that they shall be placed as directed, and, after giving the location, dimensions and grade of the sewers, of what and how they shall be constructed, provides that the sewers shall be constructed in accordance with the plans and specifications attached to and made part of the ordinance. "under the superintendence of the department of public works." It is necessary in construction of public works that supervisory power should be vested somewhere, to see that the details of the plans and specifications are carried out in construction.   Here the number of man-holes and catch-basins was provided, and no reason is shown why an estimate of their cost could not as well be made by the commissioners appointed to estimate the cost of the improvement, as it could have been had their location been fixed and determined by the ordinance. The case falls within the rule laid down in *Springfield* v. *Mathus*, 124 Ill. 88, where this question was determined adversely to the contention of appellants.

It is said, however, that the ordinance is void for the reason that it delegates power to the commissioner of public works to change the plans and specifications, as he may deem advisable or necessary.   This is a misapprehension.   It is true, there are filed with the specifica-

tions, provisions relating to the duties, etc., of contractors for the work, which contain this language: "All the work to be commenced and carried on at such times and in such places and in such manner as the commissioner of public works shall direct;" and also, "the commissioner of public works reserves the right to make any change in the foregoing plans and specifications that the commissioner may deem desirable and necessary," and that the contractors shall furnish additional material and do additional work at a rate determined upon by the department. This is undoubtedly the form used where work is let to contractors by the department of public works of the city. We hold, in this case, that the clauses referred to, and attached to the plans and specifications, form no part of the plans and specifications adopted by and made part of the ordinance. The ordinance delegates no power to the commissioner of public works other than that which is supervisory, merely. No power is given by the ordinance proper, or by the plans and specifications made part thereof, to the commissioner of public works to change the location or character of the improvement fixed in the ordinance, and the plans and specifications adopted as part of it. It has been repeatedly held that no such power can be conferred, and we have no disposition to depart from that holding. See *Lake Shore and Michigan Southern Railway Co.* v. *Chicago*, 144 Ill. 391, and cases cited.

The next point insisted upon is, that it does not appear, from the evidence, that the premises of objectors will be specially benefited in the amount assessed against them. The first reason assigned is, that the testimony was not confined to special benefits, but was as to benefits, generally, to accrue from the improvement. It is true that in interrogating the witnesses for the city the word "special" was generally omitted when the witnesses were asked in respect of benefits to the property. It is clear, however, that the jury could not have been misled,

as the investigation was in respect of increased market value of the particular lot, block, tract or parcel of land by reason of the improvement. Moreover, no objection was made or the attention of the court in anywise called to the subject during the progress of the trial, and an opportunity afforded to correct the form of the questions propounded. And secondly, that the weight of the evidence is with objectors upon the issue of benefits. The evidence was conflicting, and a careful consideration of it has failed to convince us that the jury were not warranted in finding that objectors were not assessed more than they would be benefited, or more than their proportion of the cost of the improvement.

It is also objected that the court erred in giving the fourth instruction for the city, the first clause of which is as follows: "The jury are instructed, that if they believe, from the evidence, that the assessment as to the premises of objectors is correct and just, then the jury will find the issues for the petitioner as to said premises." The objection is, that this clause of the instruction ignores the basis upon which assessments necessarily rest, namely, the special benefits accruing to the property from the improvement, and leaves it to the jury to determine, without standard of measurement, what is correct and just. The clause is subject to the criticism made. But the jury were told by the latter clause of this instruction, and by other instructions asked by both sides, what was the true measure of damages and upon what their verdict should be based, and they would understand that they were to find whether the assessment was correct and just under the rule laid down by the court. It seems impossible that they should have been misled to the prejudice of either party.

It is objected by appellant the Illinois Central Railroad Company, that the court permitted improper evidence to go to the jury, over its objection. It is shown that the land through which the proposed sewer is to be

constructed, at and near its intersection with the right of way of the railroad company, is low and marshy, and in the main unoccupied. The city, over the objection of this appellant, was permitted to offer evidence tending to show that, as a result of the drainage of the country adjacent, by this sewer, it would likely become improved and habitable, and thereby the revenues of the railroad company, as such, would be increased. The court at first sustained an objection to this class of testimony, but subsequently ruled: "I think I will allow you to show that this sewer will benefit the company, as a corporation, in a material sense, without confining it to that particular tract of land." Thereupon the city was permitted to show that the effect of the settlement of the locality would be to increase business upon the company's road, and thereby benefit appellant. This was clearly erroneous. The assumption is based upon mere conjecture. If it be conceded that the effect will be to cause the locality to become settled, whether the business will be done by appellant's road, its extent and the amount of revenue derived therefrom, are the merest speculation. But if this was otherwise, the rule is well established that in making special assessments for local improvements the measure of benefits to be assessed is to be determined by the increased market value of the *res* against which the assessment is made. *Craw* v. *Tolono*, 96 Ill. 255; *St. John* v. *East St. Louis*, 50 id. 92; *Davis* v. *Litchfield*, 145 id. 313; Burroughs on Taxation, 460, *et seq.*; Cooley on Taxation, 464, *et seq.*

The distinction between the foundation upon which the right of general taxation is based, and that upon which local assessment rests, is everywhere recognized. General taxes are imposed for the support of government, and are borne by the citizen in return for the protection afforded to life, liberty and property, and to which all must contribute upon some basis of equality among those receiving the like benefits. Special assessments and

special taxation for local improvements are based upon the benefits to the property itself, arising from its increased value in consequence of the improvement. In the one case, the taxes are assessed against the individual, and become a charge upon his property generally; in the other, the assessment, being for the benefits accruing to the specific property, becomes a charge only upon and against it, and liability for the tax is confined to the particular property benefited. This has become so well settled in this State that we need not enlarge upon it. It necessarily follows that benefits to the corporation by an increase of its business, except so far as the benefits may tend to show a present increased value of the tract of land against which the assessment is sought, formed no proper basis for special assessment. Nor was the prejudicial effect of this evidence removed by the instructions subsequently given to the jury. True, by the tenth and eleventh instructions given, the jury were told, in effect, that benefits to accrue from a supposed increase of "passenger traffic," hereafter to result, should be disregarded by the jury, etc. This was too narrow, and would not have the effect of excluding from the jury, benefits from increased business of the road, resulting in consequence of the improvement. It was not shown in the evidence from what the benefits to this appellant's business would flow, and the jury were left at liberty to consider the evidence, except so far as it related to passenger traffic.

To pay the cost of this improvement an assessment of $2400 was levied on all the right of way of the Illinois Central Railroad Company lying within the north-east quarter of section 26, township 38, north, range 14, east of the third principal meridian. It is shown that the right of way is two hundred feet wide, that the road-bed, upon which are six main tracks, has, by throwing the earth from the ditches on either side and by the addition of sand and gravel, been raised to an elevation of five or

six feet above the natural surface of the surrounding locality, and that while water would accumulate in the ditches, etc., the road-bed has, for very many years, remained unaffected by water, and it is insisted, therefore, that the sewer, as the right of way is used only for the passage of trains, is of no benefit to the right of way, and the judgment is therefore erroneous.    It is sufficient to say that the evidence is conflicting, in some respects, as to the benefit to accrue from the improvement to this property.    There is evidence tending to show that, independently of the effect of the water upon the road-bed, the drainage of the ditches and parts of the right of way outside of the road-way will be of benefit.    As the case must again be submitted to a jury, we refrain from discussion of the evidence bearing upon the amount of benefits shown to accrue to the land.

It is also insisted by the railway company that its right of way is not liable for special assessments.    This can more appropriately be considered with the cross-errors.

There was also assessed against the right of way of the Illinois Central Railroad Company lying within the north-west quarter of section 30, township 38, north, range 14, east, the sum of $400, this latter being the right of way of the South Chicago Railway Company, operated by the Illinois Central.    No point is made upon the designation of the ownership of the property.    It is shown that the South Chicago railroad is a branch, running from the Illinois Central main tracks to South Chicago, and that the right of way assessed is located along Seventy-first street and Railroad avenue, and that these are public streets of the city.    The jury returned a verdict finding that said right of way was not assessed more than it would be benefited, or more than its proportionate share of the cost of the improvement.    On motion of the railway company the court set aside the verdict and annulled the assessment, and the city assigns cross-

errors questioning this ruling. The question sharply presented is, whether the right of way of the railroad company is liable to special assessment for local improvements.

In respect of the first assessment mentioned there can be no doubt that the tract described as the right of way is land, within the meaning of the statute authorizing special assessments. The assessment roll returned was of the lots, blocks, tracts and parcels of land specially benefited, and from the description given, "the right of way," etc., the tract or parcel of land intended could be accurately ascertained.

In respect of the second assessment, where, as we understand, the tracks are laid in the public street of the city, it is perhaps more questionable. Counsel concede that in *Chicago* v. *Baer*, 41 Ill. 306, and *Parmalee* v. *Chicago*, 60 id. 267, and, following these cases, *Chicago Railway Co.* v. *Chicago*, 90 id. 573, it was decided that the right of way, right of occupancy, franchise and interest of a street railroad company located in the street of the city are liable to be assessed for local improvements. It is, however, said, that the statute under which the *Baer* and *Parmalee cases* were decided was essentially different from the Cities and Villages act of 1872, and that the case of *Chicago Railway Co.* v. *Chicago, supra*, was decided wholly upon the authority of those cases, without observing the distinction in the provisions of the statutes. The statute referred to is the amended charter of the city of Chicago of 1863, (Private Laws of 1863, p. 82,) the second section of which provided that "the expenses of any improvement mentioned in the foregoing section shall be defrayed * * * by special assessment upon real estate benefited thereby," etc. By section 12 the commissioners are to apportion and assess the cost, etc., "upon the real estate by them deemed benefited," and in their return they shall describe the "real estate" upon which the assessment is made, etc. The contention is,

that under the act of 1872 the assessment is to be made upon "lots, blocks, tracts and parcels of land," and that the description is less broad than the term "real estate," used in the former statute.    The distinction sought to be made does not exist.   Under the act of 1872 the corporate authorities of cities and villages are, by section 1, article 9, authorized to make local improvements by special assessment of "contiguous property," —meaning, necessarily, real property,—contiguous to and benefited by the proposed improvement.   (*T. & L. R. R. Co.* v. *Kane,* 9 Hun, 508.)   The subsequent direction, in section 24, for the government of the commissioners in making the assessment, requires them to examine the locality where the improvement is proposed to be made, and the "lots, blocks, tracts and parcels of land" that will be specially benefited, and, having fixed the proportion that will be of benefit to the property to be assessed, to assess and apportion that amount upon the "lots, blocks, tracts and parcels of land" in the proportion they are actually benefited, and by section 26 are required to make a return in like manner, giving a description of each "lot, block, tract or parcel of land," with the amount assessed as special benefits.   The evident purpose of the legislature was to require the examination and assessment of each piece of property proposed to be included within the assessment, and to require a description thereof.   A careful reading of the act will show that the legislature has used the terms "property," (secs. 1, 24,) "real property," (sec. 39,) "real estate," (sec. 30,) "property assessed," (sec. 38,) "premises," (secs. 28–31,) "property benefited," (sec. 24,) interchangeably with the terms "lots, blocks, tracts and parcels of land," and it cannot be supposed that the legislature intended, by the use of the latter terms, to create a limitation upon the power to assess "contiguous property."   The city authorities being authorized to make special assessments upon "property benefited," the power is necessarily as

broad as that given by the words "real estate benefited," and the cases of *Chicago* v. *Baer*, *Parmalee* v. *Chicago*, and *Chicago Railway Co.* v. *Chicago*, *supra*, are controlling.

As sustaining the construction that railroad right of way in streets is real estate and land, within the meaning of the act authorizing special assessments for local improvements, see, also, *N. I. R. R. Co.* v. *Connelly*, 10 Ohio St. 499; *New Haven* v. *Fair Haven Railroad Co.* 38 Conn. 422; *Railroad Co.* v. *Spearman*, 12 Iowa, 117; *Appeal of N. B. & M. R. R. Co.* 32 Cal. 499; *P. & I. R. R. Co.* v. *Hanna*, 68 Ind. 562; *Ludlow* v. *Trustees, etc.* 78 Ky. 357; *Brighton Ry. Co.* v. *St. Giles*, 4 L. R. (Exch. Div.) 239; Cooley on Taxation, 458; Pierce on Railroads, 480.

We are of opinion, therefore, that while the county court correctly set aside the verdict of the jury for the error in the admission of testimony before noted, it erred in annulling and setting aside the assessment *in toto* upon the right of way of the railroad in the north-west quarter of section 30, etc.

Other objections are urged, which have been carefully considered, but have not been deemed of sufficient merit to justify discussion.

For the error indicated, the judgments against appellant the Illinois Central Railway Company, and against the city of Chicago, in respect of the assessment of the right of way of said railroad company as located in said north-west quarter of said section 30, are reversed, and said cause remanded for further proceedings. The judgments rendered against the other appellants are severally affirmed, and the costs of this court will be apportioned by the clerk of this court in the proportion of one-half to appellants other than said railroad company, one-quarter to the Illinois Central Railroad Company, and one-quarter to the city of Chicago.

*Judgment affirmed in part and in part reversed.*