## HENRY J. WILLIS *vs.* WINONA CITY.

Submitted on briefs Oct. 23, 1894. Affirmed Nov. 5, 1894.

No. 8706.

**The facts stated.**

The city of Winona, under express legislative authority, constructed a public wagon bridge across the Mississippi river, the Minnesota end of which reaches the river bank near the foot of Main street, and at considerable height above the natural level of the land. For the purpose of connecting the bridge, for the purposes of travel and traffic, with Main and the other public streets, the city constructed an approach in and along the center of Main street, in front of plaintiff's abutting lot. This approach, which consists partly of solid abutments, and partly of a plank way supported by iron columns, gradually ascends from the natural level of the street at one end to the level of the bridge at the other.

**A bridge approach in a street is not an additional servitude.**

*Held,* that the construction and maintenance of this approach does not impose any additional servitude on the street, and does not render the city liable for damage to plaintiff's lot, in the absence of any negligence on part of the city, and of any statute imposing such liability.

**Taking toll on the bridge does not affect the rule.**

This rule is not changed by the fact that the city, under legislative authority, exacts tolls for the use of the bridge by the public.

**Sp. Laws 1887, ch. 5, construed.**

The statute authorizing the construction of this bridge and approach (Sp. Laws 1887, ch. 5) *held* not to impose any such liability on the city.

Appeal by plaintiff, Henry J. Willis, from an order of the District Court of Winona County, *Chas. M. Start,* J., made December 16, 1893, sustaining a demurrer to his complaint.

Front street in the city of Winona is seventy feet wide adjacent and parallel to the southerly bank of the Mississippi river. Main street is one hundred feet wide and runs southerly from the river, crossing Front street at a right angle. Plaintiff owns Lot one (1) in Block eight (8) on the southwest corner made by the intersection of these streets. It fronts northerly sixty feet on Front street and easterly one hundred and forty feet on Main street. It is improved and is occupied by plaintiff for the sale of coal and masons' supplies. By Sp. Laws 1891, ch. 113, the defendant the city of Winona was authorized to construct a toll bridge across

the river. The Federal Congress and the Legislature of Wisconsin each also authorized its construction. The channel span near the shore was required to be 350 feet wide with a clear *headroom* of not less than fifty five (55) feet above high water mark. As the natural surface of the ground on which the city is located is not more than ten or fifteen feet above this mark an approach of considerable length with ascending grade was required. The city constructed this approach twenty four feet wide along the center of Main street past plaintiff's lot and across Front street, elevated upon supporting columns and steel beams with a plank roadway. In front of the southerly end of plaintiff's lot it is twenty (20) feet high and at Front street it is thirty (30) feet in height. The plaintiff commenced this action against the city stating these facts and claiming that the structure is an additional servitude upon his property and upon his title to the westerly half of Main street and interferes with and obstructs his easement for access, view, light and air and greatly diminishes the market value of his lot, to his damage $5,000, and demanding judgment for that amount. The city demurred to this complaint. The court sustained the demurrer and plaintiff appeals.

*Tawney, Smith & Tawney,* for appellant.

The object of the construction of this approach along the centre of Main street and across Front street was manifestly not to improve said streets, but to obtain access to this new high bridge leading to Wisconsin. Main street has not been improved in any particular by the structure, but the travel thereon has been obstructed.

The establishment of this bridge and the construction of the approach upon Main street could not have been contemplated when the land for Main and Front streets was dedicated. They are not an incident to the use and enjoyment of the easement in said streets dedicated to the public. The rule in *Transportation Co.* v. *Chicago,* 99 U. S. 635, is not applicable to this case.

It will be observed that Main street neither extended to the Mississippi river nor across it. In *Henderson* v. *City of Minneapolis,* 32 Minn. 319, it was held that the owner of property adjacent to a public street is not entitled to damages for injuries

resulting from the exercise, in a proper manner, of lawful authority in establishing or changing the grade of the street, and that to raise the street by a bridge over railroad tracks for the convenience of travel on said street is a proper exercise of such authority. The object of the construction of the bridge over the railway tracks was to improve the street itself for the convenience and safety of the travel upon it and not for the purpose of improving a newly created highway not contemplated when the street was dedicated.

The approach and piers constructed in Main street upon plaintiff's half thereof for purposes other than improving said street for the use and convenience of the public travel thereon, are an additional servitude and constitute a taking within the meaning of the law. Elliott, Roads and Streets, p. 161; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Eaton* v. *Boston, &c., R. Co.*, 51 N. H. 504; *Jones* v. *Erie & W. V. R. Co.*, 151 Pa. St. 30.

Sp. Laws 1891, ch. 113, not only granted to the city power to construct the bridge, but charged it with the duty of acquiring its right of way by the payment of damages to the owners of abutting property and authorized condemnation of property for that purpose.

The case of *Henderson* v. *City of Minneapolis*, 32 Minn. 319, is not applicable to this case.

A municipal corporation in the control and improvement of its streets can only exercise rights and powers that a private owner can exercise over his own land and is subject to the same liability. Such corporation is liable for damages caused to private property by grading a street when a private owner of the soil over which the street is laid would be liable if making such improvement for his own use. *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *Follmann* v. *City of Mankato*, 45 Minn. 457; *Colstrum* v. *Minneapolis & St. L. Ry. Co.*, 33 Minn. 516; *Sloggy* v. *Dilworth*, 38 Minn. 179.

*W. A. Finkelnburg,* City Attorney, and *Edward Lees,* for respondent.

Sp. Laws 1891, ch. 113, does not confer a right to compensation where none existed before. The intention is merely to provide a method of ascertaining compensation in case private property had

to be taken for any purpose. *Henderson* v. *City of Minneapolis*, 32 Minn. 319.

It was quite probable that the city might be compelled to acquire private property in order to construct the bridge. At the time the act was passed, the location of the proposed bridge was uncertain, and the act itself does not attempt to locate it. It merely provides that it shall cross the river at a certain point suitable to the interests of navigation. The United States has the exclusive power of determining the location and plan of construction of all bridges across the Mississippi river. A location might be directed that would necessitate the taking of private property. The Legislature having in contemplation this possibility, made provision for it and provided for the taking of and payment for private property.

The construction of the approach to the bridge imposed no additional servitude upon these streets. The right of the city to construct the approach upon any public street in Winona, is conferred by the express terms of Sp. Laws 1891, ch. 113, § 8. An additional servitude upon a public street is imposed only when a use is made of it which is inconsistent with its use as a street and with the enjoyment of the easement therein which the public acquires by its dedication as a public street. *Newell* v. *Minneapolis L. & M. Ry. Co.*, 35 Minn. 112.

The extent and variety of uses to which a street may be put by the public, without imposing any additional servitude upon the soil which entitles abutting owners to compensation, is well stated in the dissenting opinion of Mr. Justice Earl in *Story* v. *New York Elevated R. Co.*, 90 N. Y. 122, *et seq.*

This bridge is as much a street as is Main street in the city. It is a common public thoroughfare, open to public travel and traffic. 2 Dillon, Munic. Corp. 728; Elliott, Roads and Streets, 21; *Chicago* v. *Powers*, 42 Ill. 169; *Erie City* v. *Schwingle*, 22 Pa. St. 384.

And the term bridge includes the piers and abutments which support it, as well as the approaches to it. *The Clinton Bridge*, 10 Wall. 454; *Inhabitants of Swanzey* v. *Inhabitants of Somerset*, 132 Mass. 312.

The bridge with its approaches is merely an extension of Main street. In building the bridge the city merely constructed a new

public highway, which of necessity must be connected with other highways in the city. The problem was to get from Main street onto the bridge, and this could only be done by raising the grade on a portion of Main street. This the city has done. It has raised the grade of a portion of Main street in front of the plaintiff's lot, thereby connecting the bridge with this street, and through it with all the other streets in the city. *Transportation Co.* v. *Chicago*, 99 U. S. 635.

There is no statute, general or special, which imposes upon the city of Winona any liability for consequential injuries to lot owners caused by a change in the grade of a street. Unless some statutory provision expressly creates a right to the recovery of damages for such injuries no such right exists. *Yanish* v. *City of St. Paul*, 50 Minn. 518; *Henderson* v. *City of Minneapolis*, 32 Minn. 319; *Lee* v. *City of Minneapolis*, 22 Minn. 13; *Alden* v. *City of Minneapolis*, 24 Minn. 254; *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *Selden* v. *City of Jacksonville*, 28 Fla. 558; *Struthers* v. *Dunkirk, W. & P. Ry. Co.*, 87 Pa. St. 282.

The fact that the bridge in question is a toll bridge does not take it out of the rule heretofore stated. *Commissioner* v. *Chandler*, 96 U. S. 205.

MITCHELL, J. Summarized, the facts alleged in the complaint are as follows: The plaintiff owns a lot in the city of Winona, having a frontage on both Main and Front streets. The defendant city, by virtue of and in accordance with express authority from the state, has constructed a public wagon bridge across the Mississippi river, opposite the city. The Minnesota end of the bridge reaches the shore within the city limits, near the foot of Main street. The structure, being a "high" bridge, is considerably above the natural level of the river bank; and the city, for the purpose of affording access, for public travel and traffic, to and from said bridge, from and to Main street and the other public streets of the city, has constructed an approach or way on and along Main street, in front of plaintiff's lot. This approach commences in the center of Main street, a short distance south of plaintiff's lot, and gradually rises until it reaches the height of about twenty-five feet opposite the north end of the lot. This approach is twenty-four feet wide, leaving a portion of the street on

each side of the former grade.    It is covered with plank, and is supported by abutments and columns of iron and stone.    The construction and maintenance of this approach have materially reduced the value of plaintiff's lot, but there is no allegation that it touches the body of plaintiff's lot, or that it was negligently constructed, or in any manner not expressly authorized by the ɛ ct of the legislature.    Sp. Laws 1891, ch. 113.

The bridge and approaches are open to the public for purposes of travel and traffic, but upon the payment of certain rates of toll fixed and exacted by the city.    The city has never paid the plaintiff any compensation for damages to his property.

The act referred to, after expressly authorizing the city to construct and maintain this bridge and approaches, empowers it "to condemn any property necessary to be taken for the purpose of constructing said bridge and its approaches," and provides that "the damages to abutting property owners are to be determined as provided by chapter 8 of the charter of said city."    The chapter of the charter referred to (Sp. Laws 1887, ch. 5, subch. 8) merely authorizes the taking of private property for certain public uses, and regulates the procedure in such cases, including the assessment and payment of damages.

The plaintiff bases his claim to damages on two grounds:   (1) That the act of 1891, authorizing the building of this bridge, imposes upon the city a positive duty to pay such damages; and (2) that the construction of this bridge approach has imposed an additional servitude upon the street upon which plaintiff's lot abuts.

1. Taking all the provisions of the act together, and considering its general purpose, we are clearly of opinion that it was not intended to impose upon the city a liability to pay damages, where no such liability already existed, but merely to provide a method of ascertaining and paying damages for such taking of private property as, under existing law, entitled the owner to compensation.    The city was empowered to condemn private property for the purpose of constructing this bridge and approaches.    It might become necessary to exercise that power, and the provision of the act relating to the assessment and payment of damages must be construed as referring exclusively to such cases.    It would require much more explicit language than is found in this act to justify the conclusion

that it was intended to impose upon the city a duty to pay compensation to abutting property owners for using the street for what was already a lawful street use. _Henderson v. City of Minneapolis,_ 32 Minn. 319, (20 N. W. 322;) _Minneapolis Mill Co._ v. _Board of Water Com'rs,_ 56 Minn. 485, (58 N. W. 33.)

2. Do the construction and maintenance of this bridge approach impose an additional servitude on the street? It can hardly require argument to prove that the bridge itself is a public highway. The fact that tolls are exacted for its use by the public, for the purpose of defraying the expense of its construction and maintenance, in lieu of direct taxation for that purpose, does not change its character as a public highway, so long as all persons are entitled to use it as a public thoroughfare. _County Commissioners_ v. _Chandler,_ 96 U. S. 205.

The bridge is just as much a public highway as is Main street, with which it connects; and, whether we consider the approach as a part of the former or of the latter, it is merely a part of the highway. The city having, as it was authorized to do, established a new highway across the Mississippi river, it was necessary to connect it, for purposes of travel, with Main and the other streets of the city. This it has done, in the only way it could have been done, by what, in effect, amounts merely to raising the grade of the center of Main street in front of plaintiff's lot. It can make no difference in principle whether this was done by filling up the street solidly, or, as in this case, by supporting the way on stone or iron columns. Neither is it important that the city raised the grade of only a part of the street, leaving the remainder at a lower grade. The facts that it required authority from the United States and the state of Wisconsin, as well as of Minnesota, to empower the city to build a bridge across the Mississippi, and that such bridge extended beyond the city limits, are wholly immaterial, so long as the city kept within the authority conferred upon it.

Had the authority been to tunnel under the river, and the approach had been made by cutting down the grade of a part of Main street, the principle would have been exactly the same. The doctrine of the courts everywhere, both in England and in this country (unless Ohio and Kentucky are exceptions), is that, so long

as there is no application of the street to purposes other than those of a highway, any establishment or change of grade made lawfully, and not negligently performed, does not impose an additional servitude upon the street, and hence is not within the constitutional inhibition against taking private property without compensation, and is not the basis for an action for damages, unless there be an express statute to that effect. That this is the rule, and that the facts of this case fall within it, is too well established by the decisions of this court to require the citation of authorities from other jurisdictions. *Lee* v. *City of Minneapolis*, 22 Minn. 13; *Alden* v. *City of Minneapolis*, 24 Minn. 254; *Henderson* v. *City of Minneapolis*, 32 Minn. 319, (20 N. W. 322;) *Yanish* v. *City of St. Paul*, 50 Minn. 518, (52 N. W. 925.) See, also, *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Selden* v. *City of Jacksonville*, 28 Fla. 558, (10 South 457.)

The New York Elevated Railway Cases cited by plaintiff are not authority in his favor, for they recognize and affirm the very doctrine that we have laid down *(Story* v. *New York Elevated R. Co.*, 90 N. Y. 122), but hold that the construction and maintenance on the street of an elevated railroad operated by steam, and which was not open to the public for purposes of travel and traffic, was a perversion of the street from street uses, and imposed upon it an additional servitude, which entitled abutting owners to damages. Neither does *Adams* v. *Chicago, B. & N. R. Co.*, 39 Minn. 286, (39 N. W. 629,) aid the plaintiff, for that case proceeds upon the proposition that the construction and maintenance of an ordinary commercial railway upon a street is the imposition of an additional servitude. Plaintiff also cites numerous cases as to what constitutes a "taking" of private property. The law of those cases is unquestioned. There is no doubt that the acts of the city would amount to a taking of plaintiff's property, so as to entitle him to compensation, provided the use made of the street by the city imposed an additional servitude upon it, but that is the very question in the case.

Our conclusion is that construction and maintenance of this bridge approach did not impose any additional servitude upon the

street, but was a proper street use, and hence constitutes no basis for an action in favor of plaintiff for damages.

The common-law rule often works hardship, and this has often led to legislative action changing it in some respects, particularly in case of a change of a previously established street grade; but there is no general statute, and we are cited to no special one, imposing any liability on the city of Winona in such cases, and the doctrine is too well established to warrant the courts to ignore or change it.

Order affirmed.

GILFILLAN, C. J., took no part.

(Opinion published 60 N. W. 814.)