STATE, BY MILES LORD, ATTORNEY GENERAL, v. MARY
A. KOHLER AND OTHERS.
ROSE BUILDING CORPORATION, APPELLANT.

128 N. W. (2d) 90.

April 24, 1964—No. 38,619.

*Richard E. Kyle, B. C. Hart, David C. Forsberg,* and *Briggs &
Morgan,* for appellant.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney

General, and *Gerald H. Geheren,* Special Assistant Attorney General, for respondent.

MURPHY, JUSTICE.

This case is before us on an appeal from an order of the district court denying a motion for a new trial. The dispute grows out of a condemnation proceeding by which the state took .36 of an acre of property and closed off the owner's direct access to Highway No. 51 (Snelling Avenue) in Ramsey County. We consider two assignments of error: (1) Did the trial court err in refusing to permit recovery of damages for loss of direct access to Highway No. 51? (2) Did the trial court err in sustaining objections to the admission in evidence of plans and drawings showing the potential use of the property?

From the record it appears that prior to February 4, 1957, the date of the final report of the commissioners in these condemnation proceedings, appellant, Rose Building Corporation, owned 14.6 acres of property in Ramsey County. The layout of the property appears on the accompanying sketch. It is bounded on the south by County Road B and on the north by property owned by the State Farm Mutual Automobile Insurance Company, which in turn is adjacent to limited-access Highway No. 36. The west boundary of appellant's property is adjacent to a frontage or service road which constitutes the outer lane of Highway No. 51. This frontage road runs parallel to the main lanes of travel of Highway No. 51 to a point approximately 511 feet north of the intersection of County Road B and Highway No. 51, at which point it turns slightly to the east, continuing along the boundary of appellant's property until it ends at the State Farm Mutual property.

On February 29, 1956, the state commenced condemnation proceedings against a part of appellant's property containing .36 of an acre. This particular part consisted of a strip of land on the west side of appellant's property, beginning at a point approximately 511 feet north of County Road B and running thence in a northeasterly direction. The commissioners appointed by the court awarded appellant $4,000 for this taking. On appeal to the district court, the jury awarded $5,000 to appellant for the value of the land taken. As we understand the briefs

NORTH

HIGHWAY 36

HIGHWAY #51
SNELLING AVE

ACCESS II

ROSE Bldg. Corp.
Property

SERVICE ROAD

51'

ACCESS I

COUNTY ROAD B

FIGURE 1

and arguments of appellant, there is no particular complaint as to this award. The errors upon which this appeal is predicated are based upon asserted damage resulting from a loss of access to Highway No. 51.

Prior to these proceedings there was an entrance from Highway No. 51 to appellant's property provided by a crossover between the service road and the northbound lane of the highway. This crossover was located at a point where the service road turns northeast to enter the property of State Farm Mutual. By his petition in these proceedings, the commissioner of highways stated that it was necessary "to take the right of access to said highway from the owners whose lands front thereon." Apparently, this action was a traffic-control measure taken in connection with the construction of a grade interchange at the intersection of Highway Nos. 51 and 36.

It appears that the service road had been constructed at a time when Highway No. 51 was widened, making it a divided highway. Its purpose apparently was to provide access to appellant's property as well as to that of the State Farm Mutual Automobile Insurance Company. It is not clear from the record whether, at the time of this earlier improvement, appellant received any compensation for damages to access. In any event the direct access to Highway No. 51, which the property owner previously had, is now taken away.

It was the view of the trial court that the action of the commissioner of highways in closing the entrance from appellant's property to Highway No. 51 was a reasonable exercise of the police power in the interest of public safety and therefore not compensable.

The issue as presented by appellant in its brief is this: "May the state close off an abutting property owner's direct access to the traveled lanes of a highway, leaving to the landowner as its only access to the highway a narrow frontage road which ends in a cul-de-sac, thereby substantially impairing the owner's ingress to and egress from the property, without compensating the landowner for the resulting reduction in value of his land?" The appellant in its brief and argument relies on authorities to the effect that a property owner left abutting on a cul-de-sac may recover damages, citing Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480, 6 L. R. A. (N.S.) 741;

Maletta v. Oliver Iron Min. Co. 135 Minn. 175, 160 N. W. 771; Locascio v. N. P. Ry. Co. 185 Minn. 281, 240 N. W. 661. We are not persuaded by these authorities. The service road here has always been a dead-end street. If the property owner has sustained damage, it results from the loss of direct access to the east lane of traffic of Highway No. 51 and not from any change in the service road.

■ The issue raised by appellant has been fully considered by this court in Hendrickson v. State, 267 Minn. 436, 127 N. W. (2d) 165. We there held that where in the construction of a controlled-access highway an owner of abutting property is denied reasonably convenient and suitable access to the main traveled portion of a highway reconstructed on an existing right-of-way which previously was entirely accessible to such property, compensable damage may be sustained notwithstanding the availability of a frontage road from which the property has circuitous access to the main thoroughfare at interchanges. We said (267 Minn. 445, 127 N. W. [2d] 172):

"What is reasonable ingress and egress is a fact question. If the jury decides that the location of the proposed interchange substantially impairs plaintiffs' right to reasonably convenient and suitable access to the main thoroughfare, plaintiffs are entitled to damages. Not every denial of immediate or convenient access, however, will support a claim for damages unless the aggravation is to a degree we have here proscribed."

It is unnecessary to again cite and review the numerous authorities considered in that decision. It is sufficient to say that under the Hendrickson rule above stated the case must be remanded to the district court for a new trial, so that the issue of damages may be submitted to the jury for determination. As we stated in the Hendrickson case, not every denial of immediate or convenient access will support a claim for damages. Under the circumstances of this case, however, we think there is a question of fact for the jury as to whether damages have been sustained by the property owner. Here, direct and immediate access to Highway No. 51 has been taken from the property owner. The property owner can reach the highway from only one direction on a service road which enters County Road B at the south end of the

property. The service road does not have a "turnaround" to carry traffic back to County Road B. Accordingly, we are of the view that on the basis of the record before us, the court should submit to the jury the issue of damages subject to the conditions expressed in the Hendrickson case.

■ It is next contended by appellant that the court erred in excluding its exhibits in the form of plats or plans purportedly showing the feasibility of the use of the property for a community shopping center. The trial court rejected the offers because there was no issue on this point. The state conceded that the highest and best use of the property was for a shopping center and therefore there was no reason for their introduction.

The state relies on Farmer v. Stillwater Water Co. 99 Minn. 119, 108 N. W. 824, and Board of Education v. Heywood Mfg. Co. 154 Minn. 486, 488, 192 N. W. 102, 103, which holds that "it is not competent to show that the owner intended to put the property to a particular use, or what plans for its improvement he had in mind." The appellant contends that these authorities are not in point since appellant does not claim that a landowner can introduce evidence of its intended use of its property in order to show that such intentions were frustrated by the taking. It does argue that any evidence is competent which bears upon the question of the market value of the property, including maps and plans introduced to show the feasibility of a particular use.

Authorities from other jurisdictions which have considered the admissibility of plats and plans proposed as evidence bearing on the best and most profitable use of property involved have arrived at varying results, depending upon the particular facts considered. Campbell v. City of New Haven, 101 Conn. 173, 125 A. 650; United States v. Coronado Beach Co. 255 U. S. 472, 41 S. Ct. 378, 65 L. ed. 736; Calumet River Ry. Co. v. Moore, 124 Ill. 329, 15 N. E. 764; Appalachian Elec. Power Co. v. Gorman, 191 Va. 344, 61 S. E. (2d) 33; United States v. .15 of an Acre of Land, etc. (D. Maine) 78 F. Supp. 956; Ohio Valley Ry. & Terminal Co. v. Kerth, 130 Ind. 314, 30 N. E. 298; Thornton v. City of Birmingham, 250 Ala. 651, 35 So. (2d) 545, 7 A. L. R. (2d) 773. From an examination of these au-

thorities it appears that a landowner's plan of a proposed development is admissible for the limited purpose of illustrating a way in which the land in question could be adapted to its highest and best use, provided it appears that the likelihood of a demand for the property for that purpose is such as to affect market value, but the property owner cannot go further "and describe in detail to the jury a speculative enterprise for which in his opinion or that of some expert the land might be used, and base his estimate of value upon the profits which he would expect to derive from the enterprise."[1]

It is not necessary to lay down a hard-and-fast rule as to the admissibility of documentary evidence with relation to proposed development of property involved in condemnation proceedings. The trial court is in the best position to determine whether or not in the light of all the facts in a particular case documentary evidence is relevant and helpful to the jury for determination of the issues presented. Such evidence, however, should be received with caution so as to exclude plans and designs which might mislead the jury or which are calculated to establish proof of noncompensable elements of damage. In awarding damages the jury may consider any physical change as it affects the highest and best use of the property involved. In the Hendrickson case we said (267 Minn. 446, 127 N. W. [2d] 173):

"* * * For this limited purpose the court may in its discretion receive with caution evidence of lost patronage. However, no damages as such may be assessed for diversion of traffic or for loss of customers, business, goodwill, income, or profits * * *."

We do not think that the trial court here abused its discretion in sustaining objections to the introduction of the exhibits in question. Exhibit H appears to be an architect's sketch of the proposed structures and improvements and is presented without any reference to the particular property involved. Exhibit G is a plat and sketch of the property containing a drawing of various structures with extraneous detail, which the trial court may well have considered to be in the nature of a sales prospectus rather than evidence bearing upon the issue of how

---

[1] 5 Nichols, Eminent Domain (3 ed.) § 18.11[2], p. 159.

the loss of direct access to Highway No. 51 has either limited or impaired the highest and best use of the property involved.

Reversed and new trial granted.

MR. JUSTICE OTIS, having presided at the pretrial conference, took no part in the consideration or decision of this case.