STATE, BY ROBERT W. MATTSON, ATTORNEY
GENERAL, v. PROW'S MOTEL, INC.

171 N. W. (2d) 83.

September 19, 1969—No. 41453.

*Douglas M. Head,* Attorney General, *Donn D. Christensen,* Deputy Attorney General, *Richard A. Hassel,* Assistant Attorney General, and *Winston Ehlmann,* Special Assistant Attorney General, for appellant.

*Ranta & Michals* and *A. H. Michals,* for respondent.

ROGOSHESKE, JUSTICE.

Appeal by the state from a judgment, entered pursuant to a special verdict, awarding respondent damages for the alleged taking by the state of its right of access to and from a four-lane highway and from the trial court's order denying the state's motion for a new trial.

Respondent is the owner of a motel. The approximately 4 acres of land on which the motel is situated abuts upon the east side of Trunk Highway No. 52, 500 feet north of its intersection with Second Street Northwest in Rochester. Highway No. 52 runs north and south through Rochester and is the principal highway link between Rochester and the Twin Cities. Prior to 1957, Highway No. 52 was a two-lane highway, and respondent had direct and unlimited access from its property to both the north- and south-bound lanes of the highway. In 1957, the state, as part of a project to widen Highway No. 52 north of Second Street Northwest to four lanes, instituted condemnation proceedings against respondent's land which eventually resulted in a stipulation of settlement which provided that, in return for a payment of $5,000, the state acquired title to 0.07 acres of respondent's land for a dike which was part of a creek diversion project, "together

with all right of access" from the remaining lands of respondent abutting on Highway No. 52. Although the record is far from clear, either by the terms of the stipulation or otherwise respondent retained direct access to all lanes of the reconstructed four-lane divided highway by use of a crossover at Fourth Street Northwest. This east-west street adjoins respondent's property on the south and crossed all four lanes of Highway No. 52, just south of the motel.

In 1959, as the result of a large, previously unanticipated increase in the volume of traffic on Highway No. 52, the state decided, at some point in time which the record does not reveal, that it was necessary to convert Highway No. 52 into a controlled-access highway. Accordingly, the reconstruction project which originally had covered only that part of Highway No. 52 north of Second Street Northwest, was extended southward. As part of what the state calls Phase 2 of this reconstruction project, on October 30, 1962, the state closed the crossover at Fourth Street leaving respondent's property with its closest access to and from the northbound lanes of Highway No. 52 by means of a service or frontage road constructed as part of the project and leading to on and off ramps near Second Street Northwest, approximately one-half mile to the south. Respondent also was afforded access to all four lanes of the highway to the north of the motel by means of a circuitous route east along Fourth Street Northwest, north along Sixteenth Avenue Northwest, and west along Fifth Street Northwest to the cloverleaf interchange at Fifth Street and Highway No. 52.

This prompted respondent to bring an action in the nature of mandamus seeking an order compelling the state to institute condemnation proceedings against its property on the grounds that the limitation of access to Highway No. 52 was, in fact, a new and separate construction project resulting in a taking of respondent's right of reasonable, suitable, and convenient access to its property, lowering its market value by $150,000, and thereby entitling it to damages. The state contended that the

4

entire reconstruction of Highway No. 52 was a single construction project and that the crossover at Fourth Street Northwest was purely temporary, having been constructed solely for the convenience of the respondent to give it some access to the highway until the completion of permanent on and off ramps near Second Street Northwest. The state insists that the completed reconstruction now affords respondent reasonable, suitable, and convenient access.

As in Thomsen v. State, 284 Minn. 468, 170 N. W. (2d) 575, the mandamus court found that the respondent "may have sustained damages as a result of the foregoing facts, for which [it has] not received compensation" and ordered the state to commence condemnation proceedings pursuant to Minn. St. c. 117. Pursuant to that order, the state filed a petition in the district court setting forth the order of the mandamus court, and lay commissioners were appointed. They assessed damages in the amount of $25,000, and respondent and the state both appealed from the commissioners' award. Upon a trial de novo, the trial court, quite likely following dicta in Hendrickson v. State, 267 Minn. 436, 127 N. W. (2d) 165, in effect submitted to the jury the issue of whether there had been a "taking" by the state of respondent's right of reasonable, suitable, and convenient access. The jury in a special verdict found respondent has been deprived of reasonably suitable and convenient access and found damages to be $46,800. The trial court denied the state's motion for a new trial, and the state appeals.

It is clear that under the law of this state a property owner is entitled to damages for a constitutional taking by the state of his right of reasonable, suitable, and convenient access to and from his property. Minn. Const. art. 1, § 13; State, by Mondale, v. Gannons Inc. 275 Minn. 14, 145 N. W. (2d) 321; Hendrickson v. State, *supra*.

However, whether such a taking has occurred, the nature of the taking, and the time of the taking are questions which, in an action in the nature of mandamus to compel the state to institute

condemnation proceedings, must be decided in the mandamus proceeding. Thomsen v. State, *supra*; State, by Peterson, v. Anderson, 220 Minn. 139, 19 N. W. (2d) 70.

In this case the mandamus court made no determination of the threshold legal issue of whether or not any property right of respondent had been taken or damaged in the constitutional sense, finding only that "[t]he plaintiffs may have suffered damages." This was apparently followed by a perfunctory appointment of lay commissioners when the state filed its petition pursuant to the order of the mandamus court. This was fundamental error which confused and infected all subsequent proceedings.

As we recently pointed out in Thomsen, the sole function of lay commissioners appointed by the court as required by Minn. St. 117.07 is "to ascertain and report the amount of damages that will be sustained * * * on account of such taking," the nature of which and the time thereof having been previously determined either by the court to which a petition to take is presented or, as here, in the case of so-called "inverse condemnation" proceedings, by the mandamus court. Our statutes governing condemnation proceedings contemplate that the power to determine whether some property right of a landowner has been taken or damaged in a constitutional sense be vested in the trial court.[1] In a proceeding initiated by the state to take land for highways, this seldom is a contested issue because the purpose, extent, nature, and time of the taking are apparent upon the face of the petition. Proceedings to compel condemnation, however, may raise, as in the Thomsen case, difficult questions of law and, as in this case, also disputed questions of fact.[2] To permit lay com-

---

[1] Minn. St. 117.07.

[2] In Thomsen the question was whether the landowner upon the undisputed evidence had suffered damage which was so direct, substantial, and peculiar to him, that it was different in kind and not merely in degree from that experienced by the general public. In this case, in addition to whether there has in fact been an uncompensated elimination of direct access, there are also the fact questions of when it was

missioners, or a jury on appeal of right from their award,[3] to decide such questions is not only beyond their statutory authority but in our opinion makes it difficult if not impossible to determine the validity of the damages reported by the commissioners or reassessed by a jury.

In this case, we can only speculate upon the basis for both the commissioners' and the jury's awards. The record leaves us with grave doubts as to whether the jury's award was based upon a determination that respondent had in fact been denied its prior right to direct and unlimited access to some portion of Highway No. 52; whether, if so, such denial occurred prior to or at the time when the crossover at Fourth Street Northwest was eliminated; and whether the jury found such crossover was constructed as a permanent access rather than a temporary access provided during reconstruction of the highway. We are left with doubt also as to whether the jury did, as required by Minn. St. 161.24, subd. 4, correctly evaluate the extent to which the service road mitigated any damages occasioned by the taking of direct access.

Although we are mindful that the trial court and the parties may have been misled by the dicta in Hendrickson v. State, *supra*, since clarified by our opinion in the Thomsen case, we conceive of no just way of setting matters right procedurally except to remand this case with directions to the trial court to determine with or without a jury,[4] the issues left undecided in the original mandamus proceeding. If the trial court determines there has been a taking in the constitutional sense, the nature, extent, and date of the taking should be expressly specified in the order com-

---

taken and whether it was from a two-lane highway or a four-lane highway. These are fact questions which must, if the parties so demand, be determined by a jury. Minn. St. 586.12.

[3] See, Minn. St. 117.14 which provides: "* * * The cause shall be tried by a jury, unless the parties otherwise agree, and the court or jury trying the same shall reassess the damages * * *."

[4] See, Minn. St. 586.12; Rule 81.01, Rules of Civil Procedure.

pelling condemnation to the end that any ascertainment and assessment of damages by lay commissioners may be properly evaluated by the parties before unnecessarily incurring the expense and delay of requiring that they be reassessed by a jury on appeal from the commissioners' award.

Reversed and remanded.