# PROW'S MOTEL, INC. v. STATE AND OTHERS.

200 N. W. 2d 910.

September 8, 1972—Nos. 42793, 42803, 43362.

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Deputy Attorney General, and *James M. Perrigo,* Special Assistant Attorney General, for appellant.

*Ranta & Michals* and *A. H. Michals,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

OTIS, JUSTICE.

This is a so-called inverse condemnation proceeding to determine whether the proprietor of a motel in the city of Rochester has been denied reasonably convenient and suitable access to the

highway on which its property abuts. The trial court held there was a taking within the meaning of the constitution, and we affirm.

The facts are fully set forth in State, by Mattson, v. Prow's Motel, Inc. 285 Minn. 1, 171 N. W. 2d 83 (1969), and will not be again recited. Two issues are raised by the state. First, whether the evidence permits a finding there was a constitutional taking; and, second, if there was a taking, whether the access denied was from a two-lane or from a four-lane highway.

1. The parties have stipulated that the date of taking was October 30, 1962. On that date, the state closed a crossover leading from Fourth Street, adjacent to respondent's property, to the newly completed four-lane divided highway. Since the date of taking, the nearest access to Prow's from Highway No. 52 has been from a service road entered from the highway by northbound traffic 1,800 feet south of the motel. The trial court held that this indirect access did not provide reasonably suitable and convenient access and that the service road mitigated but did not eliminate respondent's claim for damages.

The state has seized on language found in Gibson v. Commissioner of Highways, 287 Minn. 495, 500, 178 N. W. 2d 727, 731 (1970), to support its argument that there has been no taking. There, we said:

"Since the evidence does not establish a change in the highest and best use of the property, we agree with the trial court's conclusion that appellant's property was not taken or damaged in the constitutional sense."

No claim is made by Prow's that there has been a change in the highest and best use of its property. The Gibson case actually held that there was no evidence the property owner's access was "altered, acquired, diminished, or interfered with." 287 Minn. 500, 178 N. W. 2d 730. The reference to evidence of highest and best use in Gibson was dictum which, out of context, is misleading. We did not intend by Gibson to imply that no taking occurs

without a change in the highest and best use of the property. That test is simply one which we have used in fixing damages. Hendrickson v. State, 267 Minn. 436, 446, 127 N. W. 2d 165, 173 (1964). The trial court's finding that the access is no longer reasonably suitable and convenient is amply supported by the evidence.

2. In the first Prow's appeal, we said, if access was denied, it was a fact question whether it was access to a two-lane or four-lane highway. In an amended finding on September 25, 1970, the trial court held as a matter of law that "the denial of access on October 30, 1962, was clearly a denial of access to the four-lane highway which had been constructed in phase # 1 of the construction." The difficulty which arises over the nature of the taking is illustrated by the additional findings of the court "that the landowner had no vested right in access at the Fourth Street, N. W. crossover," and the court's reference in supplemental findings of July 1, 1971, to the closing of "the *temporary* Fourth Street crossover."

It is the position of the state that the August 5, 1958, stipulation, referred to in our prior opinion, gave respondent only a right of access to a service road. Respondent's subsequent access to a four-lane highway from Fourth Street, it is argued, was simply temporary and, the denial of that access gave rise to no claim for damages. We do not so construe that settlement. As nearly as we can determine from the record, after the 1958 settlement Prow's had direct access to Highway No. 52 from Fourth Street, which adjoined its property. Now, its access is some 1,800 feet farther south. Clearly, the 1958 settlement did not address itself to that change in location.

However, we are troubled by the problem of whether the trial court was justified in finding that the access was taken from a four-lane highway. That issue is complicated by the stipulation that the date of taking was the date that access to the four-lane highway by way of Fourth Street was terminated by closing the crossover. We held in Hendrickson that property owners are not

constitutionally damaged by medians which deny them access except in one direction. Consequently, had the Fourth Street access been closed to Prow's for southbound traffic but left open to it for northbound traffic, Prow's would be entitled to no compensation. It was, therefore, immaterial whether the crossover was temporary or permanent since Prow's had no constitutional right to access to southbound traffic. Consequently, as a matter of law we must hold that, although the date of taking was October 30, 1962, the measure of damages was limited to a denial of access to northbound traffic only, that being on a two-lane highway.

3. With some hesitation, we have concluded that the original verdict of $46,800 may be reinstated. While we held in the first Prow's case that it was the function of the court, and not the jury, to determine whether a taking had occurred and we reversed on that issue, we are satisfied that in awarding damages the jury did so pursuant to a charge which correctly defined the measure of damages. In its instructions to the jury, the court stated that the jury was to determine whether or not there was a denial of reasonably convenient suitable access on October 30, 1962; that the right of access was limited to one direction; that the jury was to determine whether suitable access was provided by service roads; that damages for circuity of travel could not be awarded; that the measure of damages was the difference in market value before and after the taking; that respondent's right of access before October 30, 1962, was reasonably suitable and convenient and that it was from a frontage road which led to the main traveled portion of Highway No. 52. The court went on to say:

"I instruct you that the denial or change of access for southbound traffic is not an issue in this case and you are not to concern yourselves with that. The question here is as to northbound traffic.

"* * * Now the question, however, is this: Is that circuitous access, even though it's different from that which existed pre-

viously, is that circuitous access reasonable, suitable and convenient in one direction—that is, for northbound traffic?"

By way of recapitulation, the court summarized its charge to the jury as follows:

"* * * [F]irst determine whether access after construction —October 30, 1962, as in fact it now exists today—first determine whether access for vehicular traffic in the northbound direction, whether that present circuitous access is reasonably suitable and convenient. Now if you find that this is reasonably suitable and convenient, then your deliberations as a jury should terminate and a verdict should be rendered for the defendant, the State of Minnesota.

"However, if you find that the present access for Prow's Motel is not reasonably suitable and convenient for northbound traffic, then you should determine what, if any, are the damages sustained by Prow's Motel by reason of the loss of that reasonably suitable and convenient access which Prow's Motel in fact did have before the taking of access on October 30, 1962—before the taking of access, if any, on October 30, 1962. Now the method of arriving at damages I have already alluded to, of course."

Thereupon, the court asked counsel for the state and counsel for the property owner if there were any errors or omissions in the instruction, to which both answered in the negative.

We recognize that in the first Prow's appeal we expressed doubt concerning the manner in which the jury reached its verdict. However, the only issue in that case was the impropriety of submitting to a jury the threshold questions of whether there had been a taking, the nature of the taking, and the time of the taking. Those matters have now been resolved by the trial court which has determined that there was a taking, that the taking was of access to a four-lane highway, and that it occurred on October 30, 1962. While we do not agree as to the nature of the taking, that error was not reflected in the court's original charge to the jury. A careful examination of those instructions dis-

closes, as we have indicated, that the issues before the jury were correctly defined except as to the question of whether a taking occurred. That issue has now been laid to rest by the trial court in precisely the manner found by the jury. The court in the charge having limited the consideration of damages to a denial of access in only one direction and having fixed the date of the taking as October 30, 1962, it submitted the issues exactly as they would be submitted were the case to be retried. Under such circumstances, it would be blind adherence to procedural correctness[1] to deprive the owner of the benefit of its verdict reached by a proper application of the law, more particularly where 10 years have elapsed since the time Prow's initially became entitled to compensation for the taking. Accordingly, we remand the matter to the district court with instructions to reinstate the jury's verdict awarding the property owner $46,800. Respondent is entitled to costs on this appeal.

Remanded.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[1] Under ordinary circumstances, commissioners would again have to be appointed.