**GROSSMAN INVESTMENTS,
et al., Appellants,**

v.

**STATE of Minnesota, by Hubert H.
HUMPHREY, III, its Attorney
General, Respondent.**

**No. CX–97–628.**

Court of Appeals of Minnesota.

Nov. 18, 1997.

Geoffrey P. Jarpe, Maun & Simon, PLC, St. Paul, for appellants.

Hubert H. Humphrey, III, Attorney General, Donald J. Mueting, Assistant Attorney General, St. Paul, for respondents.

Considered and decided by DAVIES, P.J., and KLAPHAKE and PETERSON, JJ.

## OPINION

PETERSON, Judge.

Appellants Grossman Investments and Metropolitan Corporation challenge the trial court's denial of their petition for writ of mandamus. The trial court concluded that no compensable property rights had been taken from appellants. We affirm.

## FACTS

Appellants are lessees and owners of property abutting Interstate 394 (I–394), previously U.S. Highway 12, in St. Louis Park. Appellant Metropolitan Corporation operates an automobile dealership, Prestige Lincoln–Mercury (Prestige), and leases the property from appellant Grossman Investments. In 1990 and 1991, the State of Minnesota reconstructed and converted Highway 12 into I–394. Prior to the conversion, appellants' property could be accessed from Highway 12 via signalized intersections at Florida and Louisiana Avenues. The Florida Avenue access was located at the northeast corner of appellants' property; a northwest corner access to the dealership was approximately one-half mile from Louisiana Avenue. During the reconstruction, the state eliminated the Florida Avenue intersection and converted the Louisiana Avenue intersection into a diamond interchange. The state also raised the grade of the road and constructed a pedestrian bridge across I–394 in front of appellants' property. The state took no land from appellants for any part of the highway reconstruction.

In 1996, appellants filed a petition for writ of mandamus to compel the state to initiate eminent domain proceedings, contending that the changes in access and view constituted a taking under Minn. Const. art. I, § 13, and Minn.Stat. § 160.08, subd. 5 (1996). Because the material facts were undisputed, the parties submitted the issues to the trial court for decision on the briefs, arguments, and supporting affidavits. The court denied the petition, and appellants brought an alternative motion for a new trial or amended findings. This appeal is from the court's denial of appellants' posttrial motions.

## ISSUES

I. Did the trial court err in concluding that appellants have reasonably convenient access to their property in at least one direction?

II. Did the trial court err in finding that appellants' loss of view over the abutting freeway is not compensable?

## ANALYSIS

### I. Access

■ Minn. Const. art. I, § 13, provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation." A taking or damage can arise out of any interference by the state with the ownership, possession, enjoyment or value of private property. *See, e.g., Burger v. City of St. Paul,* 241 Minn. 285, 293, 64 N.W.2d 73, 78 (1954).

■ Property owners have a right of "reasonably convenient and suitable access" to a public street or highway that abuts their property. *Hendrickson v. State,* 267 Minn. 436, 446, 127 N.W.2d 165, 173 (1964). This right of access is "a property right in the nature of an easement." *State by Mondale v. Gannons, Inc.,* 275 Minn. 14, 24, 145 N.W.2d 321, 329 (1966). When the state alters an abutting property owner's access to a roadway, there can be a taking even if no property is actually physically appropriated. *Thomsen v. State by Head,* 284 Minn. 468, 471, 170 N.W.2d 575, 578 (1969). Further, Minn.Stat. § 160.08, subd. 5 (1996), provides that when the state or other road authorities establish a controlled access highway, property owners shall be compensated for "any elimination of existing access, air, view, light or other compensable property rights."

■ However, not every denial of immediate or convenient access will support a claim for damages. *Hendrickson,* 267 Minn. at 446, 127 N.W.2d at 173. An abutting property owner suffers compensable damage for loss of access only when the owner is left without " 'reasonably convenient and suitable access to the main thoroughfare in at least one direction.' " *Gannons,* 275 Minn. at 19, 145 N.W.2d at 326 (quoting *Hendrickson,* 267

Minn. at 436, 127 N.W.2d at 167). The imposition of even substantial inconvenience has not been considered tantamount to a denial of reasonable access. *Johnson v. City of Plymouth,* 263 N.W.2d 603, 607 (Minn.1978).

■ Property owners who believe their property has been taken within the meaning of Minn. Const. art. I, § 13, may petition the court for a writ of mandamus to compel the state to initiate condemnation proceedings under Minn.Stat. ch. 117. *Gibson v. Commissioner of Highways,* 287 Minn. 495, 498–99, 178 N.W.2d 727, 730 (1970). In such a mandamus action, the trial court must decide, as a threshold matter, whether a taking of property has occurred in the constitutional sense. *City of Mankato v. Hilgers,* 313 N.W.2d 610, 612–13 (Minn.1981); *State by Mattson v. Prow's Motel, Inc.,* 285 Minn. 1, 5–6, 171 N.W.2d 83, 85–86 (1969). While either party may request a jury trial on the issues of fact, the court ultimately decides whether the facts as determined constitute a taking. *See* Minn.Stat. § 586.12 (1996) (party is entitled to have fact issues tried by a jury).

If the court finds a taking has occurred, the court will appoint commissioners to determine damages caused by the taking. Minn.Stat. § 117.075 (1996). The property owner may appeal the commissioner's award of damages and is entitled to a jury trial. Minn.Stat. § 117.165, subd. 1 (1996).

■ The issues presented in this appeal involve mixed questions of fact and law. The existence of "reasonable access" depends on the unique circumstances of each case. *Johnson,* 263 N.W.2d at 607. Ultimately, though, the trial court must determine whether, as a matter of law, the change in access constitutes a compensable taking.[1]

■ Upon review, this court need not defer to the trial court's conclusions of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 582

---

1. While the language in *Hendrickson* suggests that the reasonableness of access is a fact question to be decided by a jury, the court also stated that if certain facts had existed, it would have found that access was reasonable as a matter of law. *Hendrickson,* 267 Minn. at 445–46 & n. 19,

127 N.W.2d at 172–73 & n. 19. Because *Hendrickson* was presented on stipulated facts, it is not clear why the court remanded the case and did not simply conclude as a matter of law regarding the existence of a taking.

(Minn.1977); *Popp v. County of Winona,* 430 N.W.2d 19, 22 (Minn.App.1988), *review denied* (Minn. Nov. 23, 1988). Hence, this court must determine, as a matter of law, whether appellants' remaining access is reasonably convenient and suitable in at least one direction.

While it is clear from the record that appellants lost direct access to their property through closure of Florida Avenue, the remaining access to the property via Louisiana Avenue is not changed substantially. Even though closure of the Florida Avenue access increased travel time off the freeway to appellants' property from seconds to minutes, the remaining access at Louisiana Avenue is not unreasonable. Additional access, while less convenient, exists from the Xenia–Park Place exit. Not every denial of immediate or convenient access will support a claim for damages. *Hendrickson,* 267 Minn. at 446, 127 N.W.2d at 173. Moreover, the right to access does not require that property owners have access at every point on the street or highway. *State v. Northwest Airlines, Inc.,* 413 N.W.2d 514, 519 (Minn. App.1987), *review denied* (Minn. Nov. 24, 1987). While appellants' access may not be as desirable as it once was, we conclude that no compensable taking has occurred because appellants' remaining access is reasonably convenient and suitable in at least one direction.

## II. View

Appellants also contend that the changes in the grade of I–394 and the construction of a pedestrian bridge near the Prestige dealership, so obscure the visibility of the dealership from the freeway as to constitute a taking. Appellants further suggest that Minn.Stat. § 160.08, subd. 5, makes payment of compensation for elimination of existing view mandatory.

Minn.Stat. § 160.08, subd. 5 does not automatically confer a right to compensation. The statute refers to "compensable property rights," but does not define those rights. It is necessary to look to case law to define "compensable property rights."

A property owner abutting a public street possesses implied easements over the public street for light, air, and view. *Haeussler v. Braun,* 314 N.W.2d 4, 7 (Minn. 1981). Minnesota appellate courts, however, have never held that a property owner has a right to be seen from an abutting public street. This is a different right from the "easement of view" which gives a property owner the right to view outward over the abutting public street. *McCarthy v. City of Minneapolis,* 203 Minn. 427, 431, 281 N.W. 759, 761 (1938).

The right to view has been analyzed in two lines of cases. The first line of cases compensates property owners for loss of visibility resulting from changes in the land actually taken, and not merely from the impact of a construction project as a whole. *County of Anoka v. Blaine Bldg. Corp.,* 566 N.W.2d 331, 334–35 & n. 1 (Minn.1997); *State by Humphrey v. Strom,* 493 N.W.2d 554, 560–61 (Minn.1992). In *Strom,* the court declined to treat the right to be seen from an adjoining street as a separate item of damages. *Strom,* 493 N.W.2d at 561. Instead, the court allowed consideration of loss of visibility in determining the diminution in value of the remaining property. *Id.* at 561–62. Thus, under Minn. Const. Art. I, § 13, and Minn.Stat. § 160.08, subd. 5, a property owner is not entitled to compensation for damage to view unless there is at least a partial taking.

The second line of cases, while acknowledging the existence of implied easements for light, air, and view, compensates property owners only for interference with those easements from "improper street uses." *Castor v. City of Minneapolis,* 429 N.W.2d 244, 245–46 (Minn.1988); *Haeussler,* 314 N.W.2d at 8. Hence, if the alteration of an abutting roadway that interferes with view is a proper street use, no taking has occurred.

Under either analysis, appellants are not entitled to compensation for their loss of view. It is undisputed that the state did not physically take any of appellants' property. Also, the trial court properly concluded that the grade changes to I–394 and the pedestrian bridge were all proper street uses. *See, e.g., McCarthy,* 203 Minn. at 429, 281 N.W. at

760; *Willis v. Winona City*, 59 Minn. 27, 34–35, 60 N.W. 814, 816 (1894). This court has never recognized a right to be seen from an abutting highway, and we decline to create such a right in this case. Accordingly, appellants are not entitled to compensation for their loss of view over the abutting highway.

## DECISION

The trial court correctly denied appellants' motion for a writ of mandamus.

**Affirmed.**

KLAPHAKE, Judge (dissenting).

I respectfully dissent.

Prior to construction of I–394, appellants enjoyed ideal access to and from their property via Florida Avenue. What remains under these undisputed facts is hardly ideal. Direct access has been eliminated entirely. Motorists from the east must travel at least one-half mile farther once exiting the freeway, assuming they use the Louisiana exit. Motorists from the west must exit at Louisiana Avenue, at least one-half mile before Prestige comes into view. The next available exit for motorists missing the exit at Louisiana Avenue is at Xenia–Park Place. The trip back from the Xenia–Park Place exit to Prestige adds approximately four miles to the trip and takes motorists on a circuitous trip around a large industrial complex. The remaining access, coupled with the visual obstructions, makes appellants' property almost invisible to passing eastbound motorists. Eastbound motorists cannot see the dealership from I–394 until they are passing it, and are approximately one-half mile past the Louisiana Avenue exit. This leaves only the circuitous and highly inconvenient Xenia–Park Place exit as access to appellant's property. When compared to what appellants had before the construction in terms of access and view, they have suffered a significant loss.

This court is not required to defer to the trial court's conclusions regarding the reasonableness of remaining access. I see no difference between the change in access under these facts and the facts presented in *Johnson Bros. Grocery, Inc. v. State*, 304 Minn. 75, 76–77, 229 N.W.2d 504, 505 (1975), *State v. Prow's Motel, Inc.*, 285 Minn. 1, 2–3, 171 N.W.2d 83, 84–85 (1969), *State v. Kohler*, 268 Minn. 77, 128 N.W.2d 90 (1964), or *Hendrickson v. State*, 267 Minn. 436, 127 N.W.2d 165 (1964). In each of these cases, the property owner enjoyed direct access to their property from the abutting roadway, that access was significantly altered by changes to the roadway, and the supreme court concluded that the changes in access constituted a compensable taking.

Because I believe the facts here are indistinguishable from the facts in this line of cases, I would hold that a constitutional taking has occurred.