*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0486**

Loren K. Yarmon, et al.,
Appellants,

vs.

Minnesota Department of Transportation,
Respondent.

**Filed October 17, 2016
Affirmed
Kirk, Judge**

Benton County District Court
File No. 05-CV-15-120

David M. Jann, Bruce Jones, Michelle E. Weinberg, Faegre Baker Daniels, LLP, Minneapolis, Minnesota (for appellants)

Lori Swanson, Attorney General, Stephen D. Melchionne, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In this inverse-condemnation action, appellants challenge the district court's grant of summary judgment to respondent, arguing that the court erred in refusing to compel respondent to compensate them for its unconstitutional taking of their right-of-way to a

state highway. Because the district court did not err in concluding that a taking had not occurred, we affirm.

## FACTS

Appellants Loren K. Yarmon and Jane M. Yarmon are owners and lessors of property abutting the right-of-way to U.S. Highway 10. The property, which is located on CSAH 21, a frontage road to Highway 10, is improved with a gas station/convenience store and two fast-food restaurants. Prior to 2014, the property could be accessed from Highway 10 by an at-grade signalized intersection located at Highway 10 and County Road 2. The distance to the property from the intersection was approximately 600 feet. Northbound drivers wishing to access the property would turn east at the intersection onto County Road 2 and then turn north onto CSAH 21. Southbound drivers would turn east at the intersection onto County Road 2, and proceed north onto CSAH 21.

In 2014, respondent Minnesota Department of Transportation (MnDOT) reconstructed the intersection at Highway 10 and County Road 2 by installing a grade-separated interchange along the highway and constructing a highway bridge overpass crossing County Road 2. After the construction, the property is accessible by entrance and exit ramps in both directions along Highway 10. Northbound drivers on Highway 10 must travel an additional 2,600 feet along an exit ramp to access the property. Similarly, southbound drivers travel an additional 3,600 feet along an exit ramp to reach the property. Access to the property from County Road 2 to CSAH 21 remained unchanged by the construction.

2

The Yarmons filed a petition for an alternative writ of mandamus seeking to compel the state to commence condemnation proceedings, contending that the changes in access constituted an unconstitutional taking. In the petition, they argued that, as abutting property owners, they had a compensable property right to direct access to the highway, they were automatically entitled to compensation under Minn. Stat. § 160.08, subd. 5 (2014), for loss of existing access rights, and the property no longer had reasonably convenient and suitable access to the highway. In response, MnDOT requested that the district court dismiss the Yarmons' petition on its merits and award MnDOT costs and disbursements. The parties cross-filed for summary judgment.

Following a hearing, the district court granted summary judgment to MnDOT and denied the Yarmons' motion. This appeal follows.

**D E C I S I O N**

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. This court reviews the district court's grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn. 2012). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). Where the material facts are undisputed, the district court must decide as a matter of law whether an uncompensated

3

taking has occurred. *Thomsen v. State by Head*, 284 Minn. 468, 475, 170 N.W.2d 575, 580-81 (1969).

**I.     The Yarmons do not have a property right to direct and immediate access to Highway 10.**

A property owner has a compensable property right of access to an abutting public road. *C and R Stacy, LLC v. Cty. of Chisago*, 742 N.W.2d 447, 457 (Minn. App. 2007). "It is well settled under Minnesota law that property owners have a right of 'reasonably convenient and suitable access' to a public street or highway which abuts their property." *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn. 1978) (citing *Hendrickson v. State*, 267 Minn. 436, 446, 127 N.W.2d 165, 173 (1964)). "This right is in the nature of a property right." *Id.* at 605-06. The issue of whether there has been a taking of reasonably convenient and suitable access is a mixed question of fact and law. *Grossman Investments v. State by Humphrey*, 571 N.W.2d 47, 50 (Minn. App. 1998), *review denied* (Minn. Jan. 28, 1998). Whether reasonably convenient and suitable access remains is "a question of fact to be determined in light of the circumstances peculiar to each case." *Johnson*, 263 N.W.2d at 607. But whether a change in access constitutes a taking is determined as a matter of law. *Oliver v. State ex rel. Comm'r of Transp.*, 760 N.W.2d 912, 916 (Minn. App. 2009).

As abutting property owners, the Yarmons argue that they have a property right to direct and immediate access to the highway that is separate and distinct from the right to reasonably convenient and suitable access. They rely on *Hendrickson* and succeeding cases applying *Hendrickson* to argue that appellate courts have found a taking when a

4

property owner's direct and immediate access to the highway becomes indirect due to road reconstruction. 267 Minn. at 436, 127 N.W.2d at 165. The district court rejected the Yarmons' claim, concluding that such a right was not recognized under Minnesota law.

Here, the Yarmons, unlike the property owners in *Hendrickson*, have never enjoyed direct and immediate access to the highway. To the contrary, the property has always been located on CSAH 21, a frontage road to Highway 10. Further, *Hendrickson* clearly holds that not every denial of immediate or convenient access will support a claim for damages. 267 Minn. at 446, 127 N.W.2d at 173. As abutting landowners, the Yarmons can only be entitled to damages when a highway modification substantially impairs "reasonably convenient and suitable access to the main thoroughfare." *Beer v. Minn. Power & Light Co.*, 400 N.W.2d 732, 734 (Minn. 1987) (citing *Hendrickson*, 267 Minn. at 446, 127 N.W.2d at 173).

Additionally, none of the cases cited by the Yarmons recognize an abutting owner's property right to direct and immediate access to their property that is distinct from the reasonable-access test enunciated in *Hendrickson*. *See Courteaus, Inc. v. State, Dep't of Highways*, 268 N.W.2d 65, 68 (Minn. 1978) (holding property owners who were not abutting owners did not have a right to damages merely because access to a conveniently located highway may be denied and cause them to use a more circuitous route); *Johnson Bros. Grocery v. State, Dep't of Highways*, 304 Minn. 75, 76, 229 N.W.2d 504, 504 (1975) (holding rebuilding of highway where abutting property owner originally had direct and unlimited access, into a divided four-lane, limited access highway, denied owner reasonably convenient and suitable access); *Prow's Motel, Inc. v. State*, 294 Minn. 345,

5

200 N.W.2d 910 (1972) (affirming trial court's ruling that abutting motel owner's northbound access to reconstructed four-lane highway was not reasonably convenient and suitable after state closed a crossover leading from Fourth Street to highway).

## II.     Reasonably convenient and suitable access remains after construction.

The Yarmons argue that access to their property is neither reasonably convenient nor suitable because of: (1) increased distances from the northbound and southbound routes; (2) the loss of visibility resulting from the increased grade of the highway; (3) the nature of the property as an "impulse-buy" destination; and (4) the loss in the property's fair-market value.  We address each claim in turn.

Viewing the evidence in the light most favorable to the Yarmons, the increased distances to Highway 10 do not render access to the property unreasonable.  "The imposition of even substantial inconvenience has not been considered tantamount to a denial of reasonable access."  *Grossman*, 571 N.W.2d at 50; *see also Dale Props., LLC v. State*, 638 N.W.2d 763, 764-65, 767 (Minn. 2002) (holding access to and from the property remained reasonable after the closure of a median crossover resulted in additional travel times to the property exceeding half a mile and requiring drivers to make a U-turn from one direction); *Grossman*, 571 N.W.2d at 49-51 (holding the elimination of two signalized intersections and construction of a diamond interchange and pedestrian bridge did not amount to a compensable taking despite complete loss of access in one direction and increased travel time from seconds to minutes from the other direction).

The Yarmons argue that the grade elevation obstructs the visibility of the businesses from the highway.  But appellate courts have "never held that a property owner has a right

6

to be seen from an abutting public street." *Grossman*, 571 N.W.2d at 51. The only circumstance where the Yarmons could be compensated for loss of visibility is if the diminished visibility resulted from at least a partial taking of their property. *State by Humphrey v. Strom*, 493 N.W.2d 554, 561 (Minn. 1992). Because no land was taken in this case, the district court properly concluded that there was no taking caused by an elevated-grade change and the associated loss of visibility.

The Yarmons argue that there is a genuine issue of material fact concerning what is reasonable access for their property given that it is populated by "impulse-buy" businesses that are highly dependent on drivers understanding that they can get from the highway to the property and back in a very short period of time. They argue that *Grossman* is inapposite to the instant case because it involved access to a car dealership, which is less likely to involve an "impulse buy."

It is true that the question of whether reasonable access exists depends on the unique circumstances of the case, including the character of the property involved. *Johnson*, 263 N.W.2d at 607. But caselaw does not automatically confer a special status upon property owners who bring inverse condemnation claims concerning impulse-buy businesses. A court applies *Hendrickson's* reasonable-access test irrespective of whether the property is populated by an impulse-buy business or a car dealership.

The Yarmons argue that under *County of Anoka v. Esmailzadeh*, a district court must consider the effect of impaired access on an impulse-buy business when determining whether a taking has occurred. 498 N.W.2d 58, 59 (Minn. App. 1993), *review denied* (Minn. May 28, 1993). In *Esmailzadeh*, we reversed and remanded to the district court to

7

focus on whether or not the property owner suffered a loss of reasonable access in light of uncontroverted evidence that recreational vehicles, which constituted the bulk of the businesses' patronage, were physically unable to make a U-turn to access the property. *Id.* at 61-62. But there is no evidence in this case that patrons are as similarly inconvenienced in accessing the property.

Because the district court properly determined that no taking had occurred, it did not need to evaluate the fair market value of the property after highway reconstruction. Any loss in the fair market value of the property need only be considered *after* a finding that access to the property is no longer reasonable. *See Hendrickson*, 267 Minn. at 445-46, 127 N.W.2d at 172-73 (holding that if the fact-finder determines a substantial impairment to a plaintiff's right to reasonably convenient and suitable access, the plaintiff is entitled to damages).

## III. The Yarmons do not have an automatic right to compensation under Minn. Stat. § 160.08, subd. 5 (2014).

Minn. Const. art. 1, § 13, provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Likewise, Minn. Stat. § 160.08, subd. 4 (2014), provides that "[p]roperty rights, including rights of access, air, view, and light, may be acquired by [state] road authorities with respect to both private and public property by purchase, gift, or condemnation." Property owners who believe that the state has effectuated an unconstitutional taking of their property may petition the district court for a writ of mandamus to compel the state to initiate condemnation proceedings. *Dale Props.*, 638 N.W.2d at 765.

8

Separate and distinct from existing common-law remedies, the Yarmons allege that Minn. Stat. § 160.08, subd. 5 (2014), requires MnDOT to compensate them for the uncompensated taking of their existing access to the highway. Minn. Stat. § 160.08, subd. 5, authorizes state road authorities to locate, establish, and construct controlled-access highways and eliminate grade intersections of controlled-access highways with other existing streets or highways. "In the case of any elimination of existing access, air, view, light, or other compensable property rights, the owner shall be compensated for the loss by purchase or condemnation." *Id.*

The Yarmons contend that the phrase "any elimination of existing access" in the triggering clause and the phrase "compensable property rights" should be interpreted to mean that the elimination of *any* existing access is automatically a compensable property right.

Relying on *Grossman*, the district court concluded that Minn. Stat. § 160.08, subd. 5, does not automatically create a right to compensation as the property owner must first demonstrate loss of reasonably convenient and suitable access to the main thoroughfare in at least one direction. 571 N.W.2d at 51. And that did not occur in this case.

We agree. In *Grossman*, we considered whether the statute automatically triggered compensation for the elimination of the existing visibility of a car dealership from the highway. 571 N.W.2d at 51. At the outset, we noted that Minn. Stat. § 160.08, subd. 5, does not automatically confer a right to compensation, and turned to caselaw to determine whether the loss of visibility resulting from construction changes to the highway was a compensable property right. *Id.* The Yarmons are not entitled to compensation under

9

Minn. Stat. § 160.08, subd. 5, unless they can prove compensable damage from the loss of reasonably convenient and suitable access to the main thoroughfare in at least one direction. *Id.* at 50 (citing *State by Mondale v. Gannons, Inc.*, 275 Minn. 14, 19, 145 N.W.2d 321, 326 (1966)).

**Affirmed.**